709 So.2d 352 (1998)
Rebecca Dowd SHERROD
v.
Thomas W. SHERROD.
No. 97-CA-907.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 1998.
*353 Mitchell J. Hoffman, New Orleans, for Plaintiff-Appellee.
R. Scott Buhrer, Bennett Wolff, New Orleans, for Defendant-Appellant.
Before DUFRESNE, WICKER and GOTHARD, JJ.
DUFRESNE, Judge.
This is an appeal from a trial court judgment partitioning the community of acquets and gains that formerly existed between Rebecca Dowd Sherrod and Thomas W. Sherrod. For the reasons which follow, we affirm the trial court's judgment.
On June 12, 1982, plaintiff/appellee, Rebecca Dowd Sherrod, and defendant/appellant, Thomas W. Sherrod, were married. The parties were thereafter divorced by judgment signed on August 11, 1992, retroactively terminating the community of acquets and gains as of April 7, 1992, the date the petition for divorce was filed. On May 5, 1994, Mr. Sherrod filed a petition for partition of community property pursuant to LSA-R.S. 9:2801. The trial on the community property partition was conducted on October 4, 1995, November 9, 1995, and November 20, 1995. After considering the evidence presented, the trial judge issued a judgment on January 4, 1996, partitioning the community estate which previously existed between the parties. Thereafter, both Thomas Sherrod and Rebecca Sherrod filed a motion for new trial alleging that the judgment was unclear in several respects and requesting clarification. On May 19, 1997, the trial judge rendered a revised judgment of partition. It is from a portion of this judgment that Mr. Sherrod now appeals.
*354 LSA-R.S. 9:2801 provides the procedure for judicial partitions of community property and settlement of claims after dissolution of the marriage. The section of R.S. 9:2801 which sets out the allocation of assets and liabilities reads, in part, as follows:
(4) The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
It is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Kambur v. Kambur, 94-775 (La. App. 5 Cir. 3/1/95), 652 So.2d 99. A court of appeal may not set aside a trial court's finding of fact in absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La. 1989); Madere v. Madere, 93-610 (La.App. 5 Cir. 2/9/94), 632 So.2d 1180.
In light of these precepts, we will now address the four aspects of the community property partition about which appellant complains. In his first assigned error, Mr. Sherrod claims that the trial court erred by failing to find that the promissory note executed in favor of Marge Sherrod constituted a valid community obligation.
During the existence of the community, Marge Sherrod, appellant's mother, advanced the couple the sum of $15,276.60 to be used as a down payment on a house in Picayune, Mississippi. A promissory note in that amount was executed by Thomas Sherrod in favor of his mother, although not signed contemporaneously with the advance of funds. The note was dated August 13, 1991, was payable on demand, and provided for 5% interest from August 13, 1991 until paid. It was undisputed at trial that no payments had been made on this note, and further that no demand was made for payment by Marge Sherrod until after the petition for the partition of community property was filed. While these particular facts were fairly clear, there was conflicting evidence presented at trial regarding the circumstances surrounding the advancement of these funds to Thomas and Rebecca Sherrod.
Thomas Sherrod testified that he and his family were planning to move to Mississippi because of his employment; however, they did not have sufficient funds to buy a house, so he asked his mother to loan them money for a down payment, with the understanding that she would be repaid. According to Mr. Sherrod, his mother, at no time, offered to forgive this debt, nor did she ever indicate that it was a gift or that she did not expect payment. Regarding the actual signing of the promissory note, Mr. Sherrod acknowledged that Rebecca was not asked to sign the note.
*355 Rebecca Sherrod testified that she knew that Marge Sherrod was giving them funds for the down payment, but was not aware that it was a loan. She testified that she understood that the money was a gift and she did not know the terms of any arrangement that was reached between Thomas and his mother with regard to repayment. According to Rebecca Sherrod, Marge Sherrod never told her that it was a loan or that she expected it to be repaid.
Marge Sherrod also testified at the partition trial regarding the advance of this money. Marge Sherrod testified that Rebecca was aware of the advance of funds, but acknowledged that she never discussed the financial dealings between Thomas and herself with Rebecca. According to Marge Sherrod, she never intended this money to be a gift, and in fact, asked her son, Thomas, to provide her with a promissory note evidencing the debt. She further testified that she has received no payment on the note, despite the fact that in November of 1994, she sent a letter requesting payment to both Thomas and Rebecca Sherrod. However, she admitted that despite this lack of payment, she did not file a lawsuit or pursue other legal means to recover on that debt. She claimed that Rebecca did not sign the promissory note because she never saw her to get her to sign it.
After considering the conflicting evidence presented, the judge refused to consider this as a community debt, finding that there was insufficient proof as to the validity of the note in favor of Marge Sherrod. Based on our review of the record, we cannot say that the trial judge was manifestly erroneous in this determination.
Within the context of this assigned error, Mr. Sherrod also attempts to make an issue of the fact that Mrs. Sherrod, in the sworn descriptive list that she filed on December 19, 1994, listed the money owed to Marge Sherrod as a community liability. Appellant claims that the fact that Rebecca Sherrod acknowledged this debt constituted a judicial admission and thus substantially impeached her credibility at trial. We reject this argument. Thomas Sherrod was well aware that this alleged liability was at issue and in fact, a large part of the testimony elicited at trial focused on the money owed to Marge Sherrod. Moreover, Mr. Sherrod did not assert the issue of this alleged "admission" at trial and therefore is precluded from raising it on appeal. Stewart v. Winn Dixie Louisiana, Inc., 96-599 (La.App. 5 Cir. 12/11/96), 686 So.2d 907. Based on the foregoing discussion, we find the issues raised in Mr. Sherrod's first assigned error to be without merit.
In his second specified error, Mr. Sherrod complains about the value assigned to the 1991 Toyota Previa by the trial judge. Specifically, he alleges that the trial judge should have subtracted the high mileage factor as set forth in the N.A.D.A. bluebook. He additionally argues that the trial judge erred by adding the value of two options to the car, a compact disc player and a sun roof, which were allegedly inoperable.
In the supplemental sworn descriptive list filed by Mr. Sherrod, he valued the Toyota Previa at $8,500.00, while Mrs. Sherrod, in her descriptive list, valued it at $14,000.00. At the trial on the partition of the property, the trial judge listened to testimony concerning the various features in the Toyota Previa. He thereafter assigned a value of $12,675.00 to the Previa, relying on the N.A.D.A. bluebook value.
In valuing assets, the trial court is not required to accept, at face value, the valuation placed on assets by either spouse. If the trial court's valuations are reasonably supported by the record and do not constitute an abuse of discretion, its determinations should be affirmed. Alford v. Alford, 94-1464 (La.App. 3 Cir. 4/5/95), 653 So.2d 133; Hunter v. Hunter, 468 So.2d 734 (La. App. 5 Cir.1985). In the present case, the value assigned to the Toyota Previa by the trial judge is amply supported by the record and does not constitute an abuse of discretion. Thus, this specification of error is without merit.
Mr. Sherrod also complains that the trial court erred in denying him reimbursement for separate funds utilized for the community benefit. In the partition proceeding, *356 appellant sought reimbursement for one-half of $19,162.94, representing a portion of inheritances from his grandmother and great aunt which were deposited into a community checking account and allegedly used for community purposes. While the court did allow a reimbursement for the $10,000 spent on the Toyota Previa, it disallowed his reimbursement claims for the remaining amount.
LSA-C.C. art. 2365 reads as follows:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
Nevertheless, if the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community, the spouse is entitled to reimbursement from the other spouse regardless of the value of that spouse's share of the community.
The burden of proof is on the party claiming reimbursement to show that separate funds existed and that those funds were used for the benefit of the community. Fountain v. Fountain, 93 2176 (La.App. 1 Cir. 10/7/94), 644 So.2d 733; Rogers v. Rogers, 94-541 (La.App. 5 Cir. 12/9/94), 649 So.2d 7. In Krielow v. Krielow, 93-2539 (La.4/11/94), 635 So.2d 180, the Louisiana Supreme Court stated that the burden of proof is on the party claiming reimbursement to show by a preponderance of the evidence the nature of the indebtedness, whether the community obligations were incurred for the ordinary and customary expenses of the marriage. Mr. Sherrod failed to make the required showing.
First, these funds were clearly commingled with community property. Thereafter, they became untraceable. Mr. Sherrod testified that he used his inheritance for general community obligations and living expenses; however, he offered no proof in support thereof. In fact, Mrs. Sherrod testified that with his inheritance money, Mr. Sherrod purchased various items that were used purely for his separate benefit and that he expressly wanted for himself, such as a computer and related equipment. See Barr v. Barr, 613 So.2d 1159 (La.App. 5 Cir.1993). As the record contains no evidence that Mr. Sherrod's separate inheritance was used to benefit the community, we affirm the trial judge's ruling regarding the reimbursements due to Mr. Sherrod.
In his final assigned error, Mr. Sherrod contends that the trial court erred in allocating to him a greater percentage of certain individual retirement accounts.
In his May 19, 1997 judgment, the trial judge determined that Mr. Sherrod was entitled to reimbursements in the amount of $25,155.26 while Mrs. Sherrod was entitled to reimbursements in the amount of $14,730.15. After allocating the assets and liabilities between the parties, the court equalized the remaining amounts owed to appellant by awarding him a larger percentage of several tax deferred individual retirement accounts. Mr. Sherrod now complains about this allocation asserting that the trial judge did not take into account the negative tax consequences associated with assigning a larger percentage of the retirement accounts to him. He requests that we reverse this allocation, with instructions to the trial court to equalize the partition with non-tax deferred assets where available.
In Callender v. Callender, 625 So.2d 257 (La.App. 5 Cir.1993), writ denied, 93-3080 (La.2/4/94), 633 So.2d 583, the defendant/appellee, in his answer to the appeal, argued that the value of a certain retirement and savings plan should have been discounted to reflect the after tax value of the asset. We acknowledged that because the funds were not taxed when they were deposited into the account, some tax would be due when the funds were withdrawn. However, this court held that there was no legal basis by which we could reduce the value of an asset to reflect a reduction in value as the result of an uncertain future tax liability.
*357 In Ramstack v. Krieger, 470 So.2d 162 (La.App. 4 Cir.1985), writ denied, 474 So.2d 1310 (La.1985), the appellate court concluded that the trial court was correct in treating a particular retirement account as a present asset where the money in the retirement account could be withdrawn at any time and therefore was reducible to possession. In so holding, the court stated that appellant was not entitled to a credit for the income tax penalty that would be incurred if he withdrew the funds earlier, noting however that defendant had the option of withdrawing the funds now or of leaving them in the account for any length of time he chooses. The court then noted that while it is true that if appellant withdraws the money before a certain age, he will incur a tax liability which the plaintiff will not be required to share, it is also true that if he leaves the funds in the account, they will earn interest from which the plaintiff will not benefit.
In the present case, based on the foregoing discussion, we find the trial court's treatment of the individual retirement accounts to be an equitable solution. Mr. Sherrod made no showing at trial as to the nature of the accounts nor did he produce any evidence to show the negative tax consequences associated with the trial court's allocation. As Mr. Sherrod's argument rests on uncertain future tax liability, we find no error in the trial court's allocation of a larger percentage of these retirement benefits to Mr. Sherrod.
For the reasons set forth herein, the judgment of the trial court partitioning the community property between the parties, is hereby affirmed.
AFFIRMED.