888 So.2d 1097 (2004)
Donna Barbier SEQUEIRA
v.
Louis David SEQUEIRA.
Nos. 04-CA-433, 04-CA-463.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 2004.
Rehearing Denied January 7, 2005.
*1100 Maria M. Chaisson, Destrehan, LA, for Plaintiff/Appellee.
Keith R. Credo, Metairie, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WATER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Defendant/appellant Louis Sequeira ("Louis") appeals two judgments of the district court, one in the community property partition between himself and his former wife, appellee Donna Barbier Sequeira ("Donna"), and another denying his Motion To Reduce Child Support.
In August of 2000, Donna filed a Petition for Divorce in St. Charles Parish, which pleading included a request for a partition of community property and for damages for fraud and/or bad faith in the management of the community property. In that pleading, Donna requested, among other things, custody of the three children of the marriage, interim spousal support, child support, use of the family home, and damages for fraud and bad faith. All rights for rent and/or reimbursement in connection with the family home were reserved.
On October 12, 2000, the parties reached a Consent Judgment that, in part, awarded joint custody pending a custody evaluation, granted use of the family home to Donna, and interim child support in the amount of $1650.00 per month plus interim spousal support of $450.00 per month, and granted injunctions enjoining the parties from alienating community property and from harassing one another.
Ultimately, the parties were divorced and an order of permanent joint custody issued. In that judgment, Louis was ordered to pay $650.00 per month child support and to provide health insurance to the children. He was given the right to claim two of the children as dependents on his federal income tax return, and both parties were ordered to share equally in the extra expenses for the children. In February 2002, child support was assessed at $759.78. Various rules and orders involving injunction violations, visitation, and other matters were heard over the next three years. Various incidental matters regarding the community property were also litigated, and the parties filed sworn detailed descriptive lists. In December 2002, Donna filed a Rule For Contempt and Motion To Set Community Property Issues For Traversals And For Trial.
The Motion for Traversal was tried on July 18, 2003, following which the court rendered judgment on the parties' numerous claims. In December, 2003, a final judgment partitioning the community property was rendered. Louis' Motion For New Trial was denied, and he has perfected the present appeal. In the meantime, Louis filed a Motion to Reduce Child Support, which matter was heard by *1101 the court in January 2004. The trial court denied the motion, and Louis appeals that judgment as well.
On appeal, Louis urges that the court erred by failing to classify certain debts incurred during the existence of the community as community debts, in failing to award him a credit for the fair rental value of the community home when occupied by Donna, in not allowing a credit for $6,000.00 that was divided between the parties, and in refusing to reduce child support despite evidence that his income had decreased.
Of the debts that Louis urges were community obligations, the first is for LASIK corrective surgery that Louis had two weeks prior to the termination of the community. The Consent Judgment rendered on October 12, 2000 specified that the community was terminated effective August 8, 2000, the date on which the petition for divorce was final. The court found that Louis did not prove, by a preponderance of evidence, that the charge to Brint Eye Associates (for the eye surgery) was incurred to benefit or enhance the community.
Under La. C.C. Art. 2360, an obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation. Except as provided in article 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations. La.C.C. Art. 2361. La. C.C. Art. 2363 states in pertinent part that a separate obligation of a spouse is one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse. The Louisiana Supreme Court has held that the burden of proof is on the party claiming reimbursement in a community property partition to show by a preponderance of the evidence the nature of the indebtedness, whether the community obligations were incurred for the ordinary and customary expenses of the marriage.[1] To determine whether funds benefited the community, or were used for the "common interest of the spouses," it is necessary to examine the uses to which they were put.[2]
It is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses.[3] A court of appeal may not set aside a trial court's finding of fact in absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review.[4]
At the hearing, Louis testified that he had considered having corrective surgery early in his marriage, but ultimately heard about LASIK about a year before the divorce. He visited the doctor and decided immediately to have the procedure. Louis stated that he wanted the surgery because when playing sports, his *1102 contact lenses were sometimes displaced. Questioned about insurance coverage for the matter, he stated that he thought he would try to get the insurance company to pay but "..I was not so concerned." However, Louis testified that his out-of-pocket expenses, $3,600.00 charged to his Discover credit card, would have been the same, with or without insurance.
Louis also testified that on July 24th, 2000, he sent flowers to Donna as an "act of compassion", although he knew the marriage was "absolutely not" able to be saved and was over. Also on July 24th, Louis testified that he consulted an attorney with regard to the divorce and paid $3,795.00 in attorney fees at that time. The Discover Card statement admitted into evidence shows that the LASIK surgery was charged on July 25th, 2000, the following day. Under these circumstances, and considering the timing of this procedure, we find no error in the determination by the trial court that Louis failed to prove that the cost of the surgery was incurred for the ordinary and customary expenses of the marriage, or for the common interest of both Sequeiras, so as to constitute a community debt.
Louis next claims as a community debt a cash advance of $2500.00 from the Discover Card taken by him on July 31, 2000. Testimony at the hearing established that Louis and Donna were already physically separated as of July 29th, and that Louis was residing at his parents' home. Donna testified that Louis had earlier torn up her credit cards on July 24th, and that except for $450.00, none of the charges on the August 2000 Discover bill admitted at trial was used for community purposes. She further testified that on July 29, 2000, Louis had left the home and "taken" the children, and she had to obtain an injunction to get them back, which she did on that same day. (This pleading does not appear in the record.) According to Donna, purchases made on or after July 29th were not community debts because Louis had already left the family home, destroyed her credit cards and had taken all the money, although the children had been returned to her. When questioned, Donna stated that she did not know what the $2500.00 cash advance was used for. She did not see the children with any new clothes or other new items at that time. There was no evidence at trial to indicate Louis' use of those funds and Louis offered no explanation. The trial court found that Louis did not prove by a preponderance of the evidence that these funds were incurred to enhance the community. Given the nature of the claimed debt (an unexplained cash withdrawal), the status of the parties' marriage, the fact that they were living separate and apart at the time of the cash advance, the fact that Louis was living in his parents' home at that time, and his failure to account for the use of these funds, we find no error in the determination that Louis failed to prove that this debt was for the common interest of the spouses or Donna's benefit.
Louis claimed reimbursement for fees paid for services to a private investigator. According to Louis's statement submitted at trial, he paid the investigator $500.00 on July 24th; $1000.00 on July 25th; $3,500.00 on July 27th, and $7000.00 on July 29th, 2000. The court denied reimbursement, finding that "This Court's observation of investigative services is that this type of costs is a gamble at best. Mr. Sequeira gambled; he lost."
Louis testified at trial that he hired the private investigator because he had great concern for his children. Donna's attorney objected to further testimony regarding the purpose of the investigation, and the trial court sustained the objection, finding *1103 that Louis testified that he was concerned for the safety of his children.
The expense of hiring a private detective in divorce proceedings is clearly not a community expense under C.C. art. 2360 or 2362. Although the record indicates that the investigator was hired in connection with the divorce proceedings, it also shows that the detective never testified in the proceedings, and the parties obtained an article 102 divorce. As such, these cannot be considered costs incurred in an action for divorce under La. C.C. art. 2362.1.[5] Further, there is no record of any detective's testimony in the custody and visitation proceedings, in which Donna was granted physical custody of the children via a consent judgment.
Louis attempted to designate the expense as one for the welfare of the children and thus a community expense, comparable to a medical bill maintained on their behalf. We disagree. Medical expenses and the like are obligations imposed on parents under La. C.C. art. 227. Louis has made no showing that the well-being of the children was related to these investigation expenses. The court correctly denied this reimbursement.
Louis next urges that the court erred in failing to award him a credit for the fair rental value of the community home during the time it was occupied by Donna. In denying the reimbursement, the court noted there was no motion filed seeking to have the fair rental value set until April 17, 2003, which was set to be heard on the same date as the transversal. Because the matter was not formally put at issue until after the home was sold, the court denied the motion.
La. R.S. 9:374(C) states that a spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court. In the present case, the parties agreed to reserve the right to seek reimbursement in the consent judgment awarding Donna use of the community domicile.
A co-owner in exclusive possession may be liable for rent, but only beginning on the date another co-owner has demanded occupancy and has been refused.[6] Rental payments may not be assessed retroactively unless otherwise agreed to by the spouses or ordered by the court in the exercise of its sound and vast discretion.[7] There is no showing in the record that Louis demanded and was refused occupancy so as to entitle him to rent. Further, there is nothing in the record to indicate that Louis was prevented, at any time, by any agreement of the parties, from seeking to have a fair rental value set during the time that Donna occupied the residence. We find no abuse of discretion in the denial of reimbursement on this issue.
Louis next urges the court erred by granting Donna reimbursement for *1104 money she used to pay the Discover Card debt. The balance in question on the Discover bill was originally $11,911.47. At trial, Louis claimed $9800.00 of the total Discover expenses as community debts. The court examined the various charges on the account, and found that some were the separate debts of Louis, holding that the community portion of the entire Discover debt was only $5,123.16. Prior to the hearing Louis made some payments on the account with community funds, leaving a balance of $8945.39. Both Donna and Louis agreed to liquidate community stock and from the proceeds pay to Discover the amount of $6000.00, or $3000.00 each, to settle the account. Donna testified at trial that she wrote a check for $3000.00 to Discover because she was being hounded by them, and because her credit was being destroyed. The court determined that Donna was entitled to reimbursement for her $3000.00 payment of Louis' separate debt.
Louis urges that at the time of the payment, Donna did not indicate that she would seek reimbursement, and that had he known she intended to seek reimbursement, he might not have agreed to pay the bill. The dubious logic of this argument notwithstanding, Louis' separate liability, the total due on the Discover Card minus the sum that the court found to be community debt, was over $6000.00. The record discloses that the source of the entire $6000.00 payment made by Donna and Louis was from the liquidation of the community owned stock fund. Because it was used to pay a debt on the Discover account that was Louis's separate obligation, under La. C.C. art. 2364 Donna is entitled to reimbursement for one-half the value of the property at the time it was used, $3000.00. We find no error in the reimbursement granted on this issue.
For these reasons, the judgment regarding the community property partition is affirmed.
Louis also has appealed from a judgment denying his Rule to Reduce Child Support. In April 2002, the trial court rendered judgment ordering him to pay $759.78 per month for the support of the three minor children. In his rule, Louis averred that his income has significantly decreased from approximately $82,000.00 to $45,000.00 per year, and that Donna's income had increased. In denying the rule, the trial court found that Louis was voluntarily underemployed, and that he has consistently shown great earning potential, with salaries in the upper five figure range in past years. In his testimony, Louis stated that he had been down-sized from his prior job. The court found that Louis' only efforts to secure a better job consisted of posting his resume on the internet and talking to a few friends, and that he was content with his present income.
To these findings, the court added its observation of Louis on the witness stand as arrogant and controlling, finding that Louis purposely failed to obtain better employment in order to antagonize Donna. The court averaged Louis' income from 2002 with the income from his present job, and determined that the annualized figure approximated Louis' income when the current child support was set. Because the court determined Louis has and would receive such income until January 2005, the rule was denied.
At the hearing, Louis testified that his current salary was $45,000.00 per year, and that he had no other form of income. His position with his former employer, AT & T, was basically discontinued. He had a severance package from AT & T that ended in October, 2003, and his only current source of income is his salary. He had *1105 attempted to find a job comparable to his former salary by asking friends and family, and putting out his resume. He felt that his current job was the highest-paying employment in his field that he could obtain. When asked if he would accept higher paying employment, he testified that his job "... fits me and my family quite well. I mean, I have a lot of time available for my kids. It's flexible." On cross-examination, he testified that his income in 2000 was approximately $91,000.00, and in 2002 his income was approximately $82,000.00. Pay stubs admitted into evidence showed that in 2003, Louis received $100,152.03 from AT & T, and through October of 2003, earned another $24,230.00 from his current job.
Louis' bank statements showed numerous deposits not related to his salary. He was not sure of the source of these deposits, and they may have been loans from his brother, or from part of his severance package from AT & T. At one time, he had a "building loan" and he would sometimes pay bills from his checking account, and then deposit money from the loan back into his account. No evidence of such loan was admitted at trial. Louis also gets expense checks of $400.00-$500.00 per month, which are essentially reimbursements, and which he cashes.
Donna testified that her annual income was $44,055.00 per year. Under the shared custody arrangement, the children live with each parent 50% of the time, and the expenses of child care, school uniforms, and karate classes are shared.
Under La.R.S. 9:315(6)(b), income includes potential income of a voluntarily unemployed or underemployed party. Thus, if a party is voluntarily unemployed or underemployed, child support must be based on a determination of his or her income earning potential. La.R.S. 9:315.11. Whether a party is voluntarily under/unemployed with respect to calculating child support is a question of good faith of the party to be cast with paying the child support obligation.[8]
In virtually every case where a parent's voluntary unemployment or underemployment was found to be in good faith, courts have recognized extenuating circumstances beyond that parent's control which influenced or necessitated the voluntary change in employment. A party is not deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party. Voluntary underemployment is a fact-driven consideration. The trial court has wide discretion in determining the credibility of witnesses and its factual determinations will not be disturbed on appeal absent a showing of manifest error.[9]
With regard to Louis' income, it appears clear that his salary from his new job is approximately $45,000.00 per year, slightly more than half his former wages. However, there are numerous deposits made in Louis' checking accounts that are unexplained, and Louis' attempted explanations on other deposits are unconvincing and equivocal, at best. Further, it is clear that Louis was complacent with his job situation, and appears to have made minimal efforts to find more lucrative employment. The transcript discloses no error in the assessment by the trial court of Louis' *1106 demeanor and behavior. For example, while admitting he had submitted no job applications for other employment, he was asked whether he was sitting back and waiting around for a potential employer to contact him. He responded "Just as my wife, my-ex-wife has." Implicit in the finding by the trial court that Louis's underemployment is a deliberate attempt to antagonize Donna is the determination that Louis' underemployment is not in good faith and that there were no extenuating circumstances. We are presented no reason to disturb the assessment of Louis' credibility, and find the court did not err in concluding that Louis was voluntarily underemployed.
Under La. R.S. 9:315.11, if a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. When determining whether a spouse is underemployed for purpose of calculating a child support obligation, the court shall consider that spouse's earning capacity in light of all circumstances.[10]
In the present case, the wage earned prior to voluntary underemployment is the best estimate of earning potential. Here, Louis earned over $80,000.00 per year for years prior to his divorce. Using this wage, it is clear that Louis' earning potential is the same as it was when the present child support amount was set, and that the trial court correctly denied Louis' Motion to Reduce.
Further, in addition to his present salary, Louis had additional unexplained sources of income, evidenced by the deposits into his checking account, for which he did not properly account. For these reasons also, we find that Louis failed to prove that he was entitled to a reduction in the amount of child support.
For the foregoing reasons, the judgment denying the reduction in child support is affirmed. Louis is assessed all costs of this appeal.
JUDGMENT OF PARTITION OF COMMUNITY PROPERTY AFFIRMED; JUDGMENT DENYING MOTION TO REDUCE CHILD SUPPORT AFFIRMED.
NOTES
[1] Krielow v. Krielow, 93-2539 (La.4/11/94), 635 So.2d 180; see also Sherrod v. Sherrod, 97-907 (La.App. 5 Cir. 3/25/98), 709 So.2d 352, writ denied, 98-1121 (La.6/5/98), 720 So.2d 687.
[2] McConathy v. McConathy, 25,542 (La.App. 2 Cir. 2/23/94), 632 So.2d 1200, writ denied, 94-0750 (La.05/06/94), 637 So.2d 1052.
[3] Sherrod v. Sherrod, supra.
[4] Id.
[5] See e.g. Sarpy v. Sarpy, 323 So.2d 851, La.App. 4th Cir.1975, writ refused 328 So.2d 166.
[6] McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280, 1289, citing Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (La.1955); also Lupberger v. Lupberger, 00-2571 (La.App. 4 Cir. 12/05/01), 805 So.2d 264, 269, writ denied, XXXX-XXXX (La.5/24/02), 816 So.2d 308.
[7] McCarroll v. McCarroll, supra; Lupberger v. Lupberger supra.
[8] Stephenson v. Stephenson, 37,323 (La.App. 2 Cir. 5/14/03), 847 So.2d 175; McDaniel v. McDaniel XXXX-XXXX La.App. 3 Cir. 5/19/04 878 So.2d 686.
[9] State v. Battson, 36,336, (La.App. 2 Cir. 9/18/02), 828 So.2d 132. 1. See also Schuler v. Schuler, 04-91 (La.App. 5 Cir. 5/26/04), 876 So.2d 196.
[10] Hansel v. Hansel, XXXX-XXXX (La.App. 4 Cir. 11/21/01), 802 So.2d 875, writ denied XXXX-XXXX (La.3/8/02),811 So.2d 880.