903 So.2d 506 (2005)
Leanna Barron PEACOCK, Plaintiff-Appellee
v.
Heath Allen PEACOCK, Defendant-Appellant.
No. 39,950-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 2005.
*508 Dawn Hendrix Mims, for Appellant.
Hamilton & Hamilton, by John Clay Hamilton, Oak Grove, for Appellee.
Before BROWN, GASKINS, and LOLLEY, JJ.
BROWN, C.J.
Dissatisfied with the trial court's detailed custody and support judgment, which denied his request for modification, Heath Allen Peacock has appealed. We affirm the trial court's judgment.

Procedural History
Leanna and Heath were married in New Orleans on December 23, 2000, and subsequently established their matrimonial domicile in Oak Grove, which is in West Carroll Parish. Their daughter, Jensen Elizabeth Peacock, was born on July 18, 2001. The parties separated in January 2002 and on October 24, 2002, Leanna filed for an article 103 divorce. The parties agreed upon a custody and visitation schedule from the time of their separation until June 2003.
The parties were divorced by judgment dated June 23, 2003. At that time, on June 23, 2003, Leanna and Heath entered into a stipulated agreement addressing custody, visitation, transportation, and other matters. Leanna met with Heath a few days later to discuss with him a letter dated June 26, 2003, wherein she advised Heath of her intention to relocate with Jensen to Indianapolis, Indiana, in August 2003. Although she gave better employment opportunities as the reason for her move, the real motivation for her relocation was her impending marriage to Brian Schudiske, which took place on August 23, 2003.[1] The following day, the Schudiskes and Jensen moved to Indianapolis.
*509 Due to the parties' inability to agree upon visitation and transportation issues precipitated by Leanna's relocation, on September 25, 2003, Leanna filed a rule to set specific guidelines for Jensen's visitation with Heath, including transportation and exchange. Thereafter, on October 13, 2003, Heath filed a motion to modify custody/visitation. Because the court was only in Oak Grove once every six weeks, the hearing was held over the course of the next nine months and the court's ruling was made on July 22, 2004. This judgment provided for two "phases" of custody and support to coincide with Jensen turning five and beginning kindergarten.
In Phase I, which was to begin December 2004 and end May 31, 2006, the parties would enjoy a three week on/three week off custody rotation. Holidays and transportation issues were specifically addressed, and Heath's child support obligation was set at $38.88 per month retroactive to October 20, 2003.
In Phase II, which was to begin June 1, 2006, Leanna was awarded primary custody of Jensen, and Heath was awarded liberal visitation. Again, holidays and transportation were provided for, and Heath's child support obligation for this phase was set at $193.39 per month, except for June and July, when Jensen is to spend the majority of her time with Heath. For those two months, his obligation is reduced to $75.00 per month. It is from this judgment that Heath has appealed.

Discussion
In his first assignment of error, Heath contends that the trial court erred in approving or allowing continuation of Leanna's out-of-state relocation with the parties' child.
Louisiana's relocation statute, La. R.S. 9:355.1 et seq., requires a parent with primary custody to give notice to the non-domiciliary parent of the intent to relocate the primary residence of the minor child within their care. La. R.S. 9:355.3, 9:355.4; Johnson v. Johnson, 99-1933 (La. App. 3d Cir.04/19/00), 759 So.2d 257, writ denied, 00-1425 (La.05/31/00), 762 So.2d 635. The non-domiciliary parent who is given adequate notice then has the opportunity to initiate a hearing wherein he or she can make before the court any objection to the relocation. La. R.S. 9:355.8; Johnson, supra.
The relocating parent has the burden of proving that the proposed relocation is in good faith and in the best interest of the child. La. R.S. 9:355.13; Blackburn v. Blackburn, 37,006 (La.App.2d Cir.01/29/03), 836 So.2d 1222; Leger v. Leger, 03-419 (La.App. 3d Cir.07/02/03), 854 So.2d 955; Johnson, supra.
In the instant case, the trial court performed a very thorough analysis of the evidence in accordance with the factors set forth in La. R.S. 9:355.12 before finding that continuing the relocation would be in Jensen's best interest. As noted by Leanna's counsel on appeal, however, this was unnecessary and erroneous inasmuch as the relocation issue was not properly before the court at that time. See Hillman v. Davis, 02-0685 (La.App. 3d Cir.12/11/02), 834 So.2d 594.
As noted by the trial court, Leanna's notification did not comply with the requirements of La. R.S. 9:355.4 other than to provide Heath with actual notice of her intended relocation. Heath received and signed Leanna's letter expressing her intent to relocate. He testified that he knew *510 of Leanna's plan to relocate with Jensen to Indiana by the end of June or the beginning of July 2003 at the latest.
Heath stated that he immediately contacted his attorney once he learned of the planned relocation. Notwithstanding this or the fact of Leanna's actual move to Indiana in August of 2003, Heath did not file anything with the court objecting to the relocation in accordance with La. R.S. 9:355.8. The trial court observed in its oral reasons for judgment that Heath failed to file an objection to the relocation within 30 days of receipt of the notice as required by the relocation statute. In fact, he did not file an objection to the relocation at all. Instead, it was Leanna who initiated the instant proceedings with her rule to set guidelines for visitation/transportation which was filed on September 25, 2003. Heath did not respond until October 13, 2003, and then, it was not to object to the proposed move, which had occurred a month and a half previously, but to seek a modification of custody based upon the move and Leanna's remarriage.
In the instant case, the parties entered into a stipulated agreement regarding Jensen's custody. When the original custody decree is a stipulated judgment, the party seeking modification must prove that there has been a material change in circumstances since the original decree and that the proposed modification is in the best interest of the child. White v. Kimrey, 37,408 (La.App.2d Cir.05/14/03), 847 So.2d 157, writ not considered, 03-1943 (La.08/01/03), 849 So.2d 534; Masters v. Masters, 33,438 (La.App.2d Cir.04/05/00), 756 So.2d 1196, writ denied, 01-3096 (La.12/07/01), 803 So.2d 975.
Heath was required to show that there had been a material change in circumstances affecting Jensen's welfare since the original custody decree and that the proposed modification was in Jensen's best interest. Clearly, Leanna's failure or inability to communicate honestly and fairly with Heath about her intended marriage and impending move to Indiana, coupled with the actual move, which resulted in Jensen relocating 12-13 hours away from Heath and her paternal and maternal grandparents, constitutes a material change in circumstances affecting Jensen's welfare.
As stated in La. R.S. 9:355.12(12), the best interest of the child is the standard applicable to relocation issues as it is in all custody disputes, and La. R.S. 9:355.12 supplements and, to a great extent, overlaps La. C.C. art. 134, which sets forth the factors to be considered by the trial court in determining the best interest of the child in custody matters. See Miller v. Miller, 01-0356 (La.App. 3d Cir.10/31/01), 799 So.2d 753; Franklin v. Franklin, 99-1738 (La.App. 3d Cir.05/24/00), 763 So.2d 759. Therefore, the trial court's careful and meticulous analysis of both the relocation factors and article 134 factors will be examined in determining whether the court erred in finding that maintaining Leanna as primary domiciliary parent was in Jensen's best interest.
[T]he first things that I need to consider are the relocation factors in this case.... [which] are found in La. R.S. 9:355.12.

(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life. . . . Leanna has an excellent extent of involvement, quality of relationship with Jensen ... they have a very good relationship, a very close bond.... I also find that the duration of that relationship has been for almost all of the child's life because she was the primary care giver in [that] *511 the child, Jensen, lived with her primarily from the time of the separation in January of 2002 until I ordered the equal custody plan in October of 2003. Also prior to the separation and during the minor child's brief life while the parents were together. I also find that Leanna basically cared for Jensen because she was the mother and also because Heath was working off for part of that time and she was the one that provided most of the care giving functions for Jensen during their brief time that they were together following the child's birth....
Leanna's parents and relatives are here in Louisiana. She has virtually no one to support here besides neighbors and friends as she and her husband testified in Indiana....[T]hey have no one in the immediate vicinity who could help them from a family standpoint....[T]hat is something negative that I need to consider....
Jensen also has an excellent relationship with her father. They enjoy doing things together.... I can see that relationship blossoming in the future, between her father and her. Also, one of the big things going for the father in this case, Heath, is his parents and relatives, most of which are located right here in West Carroll Parish. In fact, his parents are apparently pretty outstanding folks and they seem to have the right attitude in trying to develop a good relationship between not only between Heath and his daughter but also between Leanna and her daughter....
Jensen now has a new baby sister, Katie... that is a major consideration that I need to consider in deciding the relocation issue as well as the child's best interest because children need to be around not only their grandparents and uncles and aunts and other extended family members. They also need to be around their siblings.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child. ... Jensen is three years of age. She seems to be developing normally. She has no special needs that were alluded to as far as physically or mentally or socially or emotionally or spiritually other than the needs of a normal child to be with both parents.... [S]he is going to be apart from one parent....[I]f I give her custody primarily to her mother, she's going to be also apart not only from her father but also from her grandparents and extended relatives on both sides of her family tree. If I give her custody to her father she's going to be away from her stepfather, her sister and some of her stepfather's relatives. The educational opportunities are available in both locations.... I think she will develop physically in either location. Emotionally, this is going to take its toll on her regardless of where I place her. (3) The feasibility of preserving a good relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.... The drive is about twelve to thirteen hours in length between West Carroll Parish and Fishers, Indiana. That's going to make it very difficult for either parent to maintain a lot of contact with this minor child.... We can make arrangements for suitable visitation. It won't be suitable as far as Heath is concerned because it will have to be periodic and he would rather see her every week or at least every other week. The logistics are horrible. The financial circumstances *512 of the parties, Leanna and her husband are a little more financially able to shoulder the transportation than Heath is presently. However when he graduates and becomes a Registered Nurse, his financial circumstances will improve as well.

(4) The child's preference, taking into consideration the age and maturity of the child. ... [T]his factor is not applicable in this case because she is only three years of age.

(5) Whether there is an established pattern of conduct by the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party. Dr. Simoneaux did find an established pattern of conduct on the part of Leanna to thwart the relationship between Jensen and her father.... I've also heard her testimony. I've heard the testimony of the other people both positive and negative, and I don't find that degree of effort on her part to thwart the relationship that he found in his interview. In fact, she has made efforts to bring the child all the way back from Indiana so that Heath could enjoy his visitation. Now, albeit had she not brought the child back, she would be subjecting herself to contempt of court. So, I'm taking that into consideration as well. But she did make the trip back and then she did file this suit in order to establish some type of travel plan for the child. So there's some indication, I believe, that she is going to make an effort to maintain the good relationship between Jensen and her dad.

(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity. [T]he relocation probably will greatly enhance Leanna's quality of life, both financially as well as emotionally. She is remarried. Her husband has got a very nice job, pays well, and I think the opportunities for her are greater in Indiana. They live in a nice home, in a nice neighborhood. Apparently the Fishers, Indiana, community is a very nice place to live and offers lots of opportunities for adults as well as children. Will the relocation enhance Jensen's life? I think it will a little bit financially. She will have her own bedroom in Indiana. She will have a little nicer place to live in.... I can see some opportunities to enhance her general quality of life in Indiana. So financially, she probably will receive a benefit. Emotionally, I don't see a great emotional benefit in the move because I feel that she has a very good solid relationship with both of her parents and also it will be somewhat negative because she will be losing the benefit of her relationship with her grandparents on both sides as well as other relatives. Again, educational opportunities, I don't see that great of a difference between the two locations.

(7) The reasons of each parent for seeking or opposing the relocation. Leanna is seeking the relocation because she's married and this is where her husband is living. Had she not gotten married, I don't think she would have relocated to Indiana. There was nothing up there to draw her to that location. The opposition to the relocation is obvious to me. Leanna says it's primarily due to resentment on the part of Heath and maybe that is a small part of his opposition but I think the major part of his opposition is the fact that he's afraid he's going to lose contact with his daughter, whom he dearly loves.

*513 (8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child. Leanna has improved her economic circumstances because she's married to a young man who can provide for her in a very nice fashion. So her circumstances have improved over her circumstances following the separation. Heath's circumstances are about the same as when they were divorced. He is trying to improve his circumstances by going to school.... [T]he proposed relocation was necessary for Leanna to improve her circumstances because that is where Brian is living and is employed and he has made efforts to try to find another job in this area, so far without success.

(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations. [T]he child support is the only issue ... Heath did pay his child support until October and then when I gave him shared custodyfifty percent custody of his child.... [H]e felt like that because he was keeping Jensen fifty percent of the time, he should not be required to pay the $325 per month child support obligation. He did not pay that child support obligation until, I believe, it was May, ... I'm not going to penalize Heath for not paying the child support obligation during theI guess, it's about five or six months for the purposes of this proceeding because I think he sincerely believed probably upon advice of his attorney that, that needed to be relooked at, at a future time based upon my decision today.

(10) The feasibility of a relocation by the objecting parent. Heath does not feel like it is feasible to relocate to Indiana. He has no one up there.... [F]easibility is not really a big factor. Although he did testify that if things did not go well for him in my decision, that he would seriously consider making arrangements to be closer to his daughter.

(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation. I don't find a history of substance abuse or violence by either parent.

(12) Any other factors affecting the best interest of the child. I think the biggest factor is that Jensen is now living with her mother and with her stepfather and half-sister in Indiana. Enjoying a very nice life up there. And she enjoys coming and visiting and living with her father and her grandmother and her grandfather and her uncle and other relatives here in West Carroll Parish when she is here.
I feel obliged while I'm considering those factors to also consider the factors outlined for me in article 134 of the Louisiana Civil Code. But since I've spent extra time on the relocation factors, I will not be spending as much time on the article 134 factors.

(1) The love, affection, and other emotional ties between each party and the child. I find that both mother and father get a star for this factor.... [T]hey both have an excellent relationship with their daughter.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child. Both of these parents have that capacity [and] ... disposition. They do give her love and affection. They both provide *514 her with spiritual guidance, sending her to church and going with her, providing for her spiritual needs as well as to continue the education and rearing of the child, both of these parents have worked with her with elementary skills in math as well as ABC's and other things. So, I find that they are on equal footing also with that factor.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs. [B]oth of these parents have the capacity and disposition to provide... and have done so very adequately in the past.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment. Jensen stayed with Leannahas stayed with Leanna most of her life and she has enjoyed a stable, adequate environment with her. However, as of October of this past year, she's lived with both parents on a 50/50 basis. And it's my desire to continue that type of environment until the child reaches school age.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes. Heath lives with his parents and his brother. They have a nice home in this area. He has not remarried but his family unit is very strong.... [H]is grandmother is going to be available to take care of Jensen if I give him custody as well as his mother and others. I was real impressed with the quality and stability of his family unit here in this area. Leanna has married. Has a very good relationship, loving marriage, with her husband, Brian. I was impressed with him. I think he's a very fine, hardworking young man. He exhibits lots of good qualities and I think he can be a very good asset as well to Jensen. And I find that both parents can provide this child with sufficient permanence of the family unit. And admittedly Heath does need some help.... [H]is family can provide him with that help that he needs at this stage in his life.

(6) The moral fitness of each party, insofar as it affects the welfare of the child. Both of these parents are very nice people. They have both made mistakes in the past, as we all do. But I think they have learned from their mistakes. They are attending church.... [T]hey're (sic) both can provide her with a very good moral example to follow in the future.

(7) The mental and physical health of each party. Both of these parents are mentally and physically healthy. I was impressed with their ability to communicate.... [B]oth ... can provide for the needs of this minor child.

(8) The home, school, and community history of the child. Jensen has spent a lot of time in West Carroll Parish. She spent a lot of time in, I guess, that's Grant Parish, if that's where Colfax is located. And then she spent some time in Rapides Parish.... And then she spent a lot of time in Fishers, Indiana....[S]he has many relatives here. She has relatives in Rapides Parish. She has no school history yet other than a small amount of schooling she has enjoyed there in Fishers.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference. [T]his will not be considered because she's only three years of age.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party. I'm really disappointed in both of them *515 because they're letting their emotions overcome their intelligence. They should be willing to forgive and forget, if only to try to benefit their minor child but so far they have not been able to do that. And it's my hope that they will be able to come to grips with the situation, that they need to be friends, at least cordial to one another, in trying to talk about the best interest of their sweet daughter.

(11) The distance between the respective residences of the parties. And that's one of the biggest obstacles in my decision in this case.

(12) The responsibility for the care and rearing of the child previously exercised by each party. Leanna ... has been the primary caregiver for their daughter for most of the daughter's life. Heath has been a good father. But he does need help as I would need help if I was in his position. And Leanna has been there and she has been the one to take care of the minor child until recently when I ordered the 50/50 custody. And while Heath has had his 50/50 custody, he's been helped by his grandmother and his mother, which I think is wonderful. But I must also consider that in making my decision.
The trial court, in accordance with its expressed desire to maintain the 50/50 custody arrangement until Jensen reached school age, devised the two-stage custody plan and Heath had no complaints about the first stage, during which the interim schedule was extended and transportation issues were specifically addressed. Heath, however, argues that the trial court erred in naming Leanna primary domiciliary parent for Stage II. Having reviewed the above reasons for the court's decision, we cannot say the judge erred in doing so. Leanna is now in the position to be a stay at home mother, not just to her new daughter, but to the parties' daughter as well. Heath works an average of 50 hours a week and attends college full-time, relying on his grandmother and mother to care for Jensen during work and school. Maintaining Leanna as domiciliary parent during the school year, with liberal visitation rights given to Heath, as well as the majority of Jensen's summer vacation, will allow the parties' daughter to benefit from quality time with both of her families, one made up of her mother, stepfather, and baby sister during the school year, and her father and his extended family during holidays and summer breaks.
Heath next contends that the trial court erred in disregarding the testimony of the court-appointed expert, Dr. John Simoneaux, who, after interviewing the parties and Jensen, recommended that the court consider giving primary domiciliary custody to Heath with very liberal visitation to Leanna.
Regarding the testimony of an expert in a custody matter, after weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. Brewer v. Brewer, 39,647 (La.App.2d Cir.03/02/05), 895 So.2d 745. The weight to be given expert testimony is dependent upon the expert's professional qualifications and experience and the facts upon which the opinion is based. It is within the trial court's discretion to substitute common sense and judgment when such a substitution appears warranted on the record as a whole. Id.; Jones v. Jones, 38,790 (La. App.2d Cir.06/25/04), 877 So.2d 1061; Derbigny v. Derbigny, 34,672 (La.App.2d Cir.04/06/01), 785 So.2d 989.
As the trier of fact, the trial court was afforded the benefit of considering Dr. Simoneaux's specialized knowledge in attempting to understand the evidence or in determining the facts at issue as provided *516 by La. C.E. art. 702. See Smith v. Tierney, 04-2482 (La.App. 1st Cir.02/16/05), 906 So.2d 586, 2005 WL 362407. This did not, however, contrary to Heath's assertion, require the court to adopt in their entirety the opinions and conclusions of Dr. Simoneaux. See Timmons v. Timmons, 605 So.2d 1162 (La.App. 2d Cir. 1992), writ denied, 608 So.2d 195 (La. 1992).
The ultimate "best interest of the child" decision remains squarely in the exclusive province of the trial court, a decision which necessarily focuses on all of the evidence and testimony presented. Day v. Day, 97-1994 (La.App. 1st Cir.04/08/98), 711 So.2d 793; W.M.E. v. E.J.E., 619 So.2d 707 (La.App. 3d Cir.1993). The trial court's extensive and thorough reasons for judgment reflect that the court carefully weighed and considered all of the evidence, including Dr. Simoneaux's recommendations, in making its determination that joint custody, with Leanna maintaining primary physical custody and domiciliary parent status, was in Jensen's best interest.
Next, Heath takes issue with the trial court's calculation of his child support obligation. According to Heath, the court correctly found Leanna, who was a stay-at-home mom to Jensen and her infant daughter Katie, to be voluntarily unemployed. Heath complains, however, that the court improperly calculated the amount of income it attributed to Leanna. He also contends that the court erred in failing to take into consideration the extraordinary expenses of his transportation to and from Indiana.
Child support is a continuous obligation of both parents; children are entitled to share in the current income of both parents and should not be the economic victims of divorce. La. 9:315(A); Romanowski v. Romanowski, 03-0124 (La.App. 1st Cir.02/23/04), 873 So.2d 656. See comment (c), La. C.C. art. 141. Income means the actual gross income of a party, if the party is employed to full capacity. La. R.S. 9:315(C)(5)(a); Romanowski, supra.
La. R.S. 9:315(C)(5)(b) and 9:315.2(B) provide that, in the case of a party who is voluntarily unemployed or underemployed, income means the potential income of the party and in such a case, gross income is calculated according to La. R.S. 9:315.11. Sequeira v. Sequeira, 04-433 (La.App. 5th Cir.11/30/04), 888 So.2d 1097; Romanowski, supra. If a party is voluntarily unemployed or underemployed, child support is calculated based on a determination of his or her earning potential, unless the party is ... caring for a child of the parties under the age of five years. La. R.S. 9:315.11; Sequeira, supra; Romanowski, supra; Walden v. Walden, 00-2911 (La. App. 1st Cir.08/14/02), 835 So.2d 513.
When determining whether a party is underemployed for purposes of calculating a child support obligation, the court shall consider that party's earning capacity in light of all circumstances. Sequeira, supra; Hansel v. Hansel, 00-1914 (La. App. 4th Cir.11/21/01), 802 So.2d 875, writ denied, 01-3365 (La.03/08/02), 811 So.2d 880.
The parties' child support obligations were calculated in two stages, with Stage II, which begins in June 2006, to coincide with Jensen getting ready to begin kindergarten, and custody and visitation arranged to follow her school schedule.[2] In *517 fact, upon Jensen's fifth birthday, the exception for voluntary unemployment or underemployment provided by La. R.S. 9:315.11 no longer applies in this case, inasmuch as Leanna will not be caring for a child of the parties under five years of age at home. See Romanowski, supra. Leanna, however, did not appeal the trial court's finding of voluntary unemployment on her part, even for Stage I of the judgment, when she would be entitled to claim the exception provided by La. R.S. 9:315.11 because she was at that time caring for Jensen, who was under the age of five.
In coming up with the amount of income to be attributed to Leanna, the trial court found that, based upon her previous employment, Leanna had the potential to work a 36-hour week earning $11.00 per hour, for a total of $1,702.80 in monthly gross income. At the time, Heath was working as a farm laborer approximately 50 hours per week at a rate of $7.25 per hour and attending school full-time. His gross monthly income was calculated to be $1,558.75, which the court recognized was significantly less than his potential income, based on prior earnings. The court, however, declined to find that Heath was voluntarily underemployed, in light of Heath's testimony that he was trying to improve his opportunities and income producing potential, and Leanna has not appealed this finding.
Together, the parties had a combined monthly adjusted income of $3,261.55, which resulted in a basic monthly support obligation of $493.39. Because of the benefits Leanna enjoys from her husband's income, which reduces her monthly expenses, the court, also taking into account the fact that Brian Schudiske was the sole provider for Leanna and their new baby, Katie, adjusted Leanna's monthly obligation upward to $300.00, which reduced Heath's monthly obligation to $193.39.[3] In doing so, the court explicitly considered the best interest of not only Jensen, but the parties as well. We find no error in the trial court's child support calculations. Regarding the issue of transportation expenses, if anything, the trial court's judgment has assessed Leanna with the majority of the expenses for Jensen's travel to and from Louisiana. As with its custody ruling, this determination was well-reasoned and based upon the specific facts and circumstances presented by these parties.
As his final assignment of error, Heath urges that the trial court erred in ordering him to pay the costs associated with a motion to dismiss the appeal filed by Leanna.
Heath filed his motion for appeal on October 18, 2004, and the clerk of court mailed a notice of appeal on November 5, 2004, stating that appeal costs were due within 20 days. Thursday, November 25 and Friday, November 26 were legal holidays; therefore, costs were due on Monday November 29, 2004. La. C.C.P. Art. 2126(B). When Heath failed to pay the estimated appeal costs timely, Leanna filed a motion to dismiss the appeal on December 6, 2004, together with an affidavit executed by a deputy clerk of court stating that, as of December 2, 2004, no costs had been paid and no extension for payment had been granted. A hearing on the motion to dismiss was set for December 17, 2004.
The same day that the motion to dismiss the appeal was filed, December 6, 2004, Heath's counsel filed a motion for extension *518 of time to pay costs, acknowledging that "due to the holidays and trial schedule of appellant's attorney, the appellant and attorney were not able to meet to discuss the appeal or for appellant to forward the correct amount of costs to the attorney for payment of the costs." A hearing was held on the motion to dismiss on December 17, 2004, and apparently Heath was taxed with the costs associated with the motion and hearing, inasmuch as that is the basis of this assignment of error. We note that the records of the Second Circuit Court of Appeal's Clerk's office reflect that appellate costs were forwarded by the district clerk of court, so apparently Heath paid these costs. We also note that although this is an expedited appeal under Rule Five, the return date had to be extended due to appellant's failure to pay costs timely and the motion to dismiss filed in response thereto.
The primary purpose of La. C.C.P. art. 2126's authorization to dismiss appeals for nonpayment of costs is to dismiss the appeal as abandoned in those cases in which an appellant files a timely appeal and thereafter decides not to pursue it. Pray v. First National Bank, 93-3027 (La.02/11/94), 634 So.2d 1163; Laborde v. Presbyterian Village of Homer, 32,639 (La.App.2d Cir.01/26/00), 750 So.2d 1182. A secondary purpose of article 2126 is to ensure prompt payment of costs of appeal by dilatory appellants. Id.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La. C.C.P. Art.1920; Koehn v. Rhodes, 38,941 (La.App.2d Cir.09/24/04), 882 So.2d 757. The court has great discretion in fixing costs. Koehn, supra; City of Shreveport v. Chanse Gas Corp., 34,958, 34,959 (La. App.2d Cir.08/22/01), 794 So.2d 962, writs denied, 01-2657, 01-2660 (La.01/04/02), 805 So.2d 209. While it is the general rule that the party cast in judgment should be taxed with costs, the trial court may assess costs in any equitable manner. Koehn, supra; Spillers v. ABH Trucking Co., Inc., 30,332 (La.App.2d Cir.04/13/98), 713 So.2d 505, writs denied, 98-1313 (La.06/26/98), 719 So.2d 1063, 98-1327 (La.06/26/98), 719 So.2d 1287. A prevailing party may be taxed with costs if that party in some way incurred additional costs pointlessly or engaged in other conduct which would equitably justify the assessment of costs to the prevailing party. Id.
As shown above, Heath failed to pay the estimated costs of appeal within the 20-day period proscribed by La. C.C.P. Art. 2126(B). In accordance with section (E) of article 2126, Leanna filed a motion to dismiss the appeal as abandoned, and a hearing was held on said motion. The trial court was certainly within its discretion in taxing Heath with the costs associated with the motion to dismiss, the filing of which was prompted by his own failure to timely remit the estimated costs of appeal.

Conclusion
For the reasons set forth above, the trial court's judgment is AFFIRMED. Costs are assessed to appellant, Heath Allen Peacock.
NOTES
[1] At trial, Leanna testified that she tried on several occasions to tell Heath about her relationship with Brian, but that he would get angry and upset before finally telling her not to tell him anything else about her boyfriends or relationships. Heath did not dispute this during his testimony, nor did he contradict Leanna's testimony that Heath attempted reconciliation with her several times, the most recent being the summer before her move to Indiana.
[2] Heath did not take issue with his monthly obligation of $38.88 for Stage I, which was made retroactive to October 20, 2003, subject to a credit for amounts previously paid by Heath.
[3] For the months of June and July, when Jensen would spend the majority of her time with her father, Heath's child support payment was reduced to $75.00 per month.