649 So.2d 7 (1994)
Melvin Karl ROGERS
v.
Karen A. Buzbee ROGERS.
No. 94-CA-541.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 1994.
*8 Clayton J. Joffrion, New Orleans, for defendant/appellant Karen A. Buzbee Rogers.
Bruce A. Miller, Metairie, for plaintiff/appellee Melvin Karl Rogers.
Before DUFRESNE, WICKER and CANNELLA, JJ.
CANNELLA, Judge.
Defendant/appellant, Karen Buzbee Rogers, appeals from a judgment partitioning the community property which she owned with her former husband, plaintiff/appellee, Melvin K. Rogers. For the reasons which follow, the district court judgment is affirmed in part, amended in part and affirmed as amended.
The parties were married on July 14, 1973. Two children were born of the marriage, Karl and Kiersten. The parties separated and a petition for divorce was filed on October 19, 1989. They were divorced by judgment dated January 4, 1991. Termination of the community related back to the date of the filing of the petition. On May 13, 1991, appellee filed a Petition For Partition Of Community Property. Trial took place on November 10, 1993 and judgment was rendered on January 13, 1994. A Motion for New Trial was denied on March 16, 1994 and appellant filed this appeal.
Appellant assigns eight errors in her appeal, each addressing the trial court's handling of disputed items of property or reimbursement. We will take up each item as presented.

*9 Reimbursement to Mr. Rogers of $9,000.

The trial court ruled that appellee expended $9,000 of his separate funds, for which he is entitled to be reimbursed, in the down payment on the family home. Appellant argues that the trial court erred because appellee did not meet his burden of proof in establishing that $9,000 of his separate funds were used for that community purpose.
The record shows that appellee received a check for $9,000, dated June 16, 1977, from his grandfather's succession. It is undisputedly his separate property. Appellee deposited that check into a checking account which both parties testified contained community funds from their salaries. Neither party could state exactly how much money was in the account when the $9,000 was deposited. Appellee testified that community funds in the account was more than $1,000 but less than $5,000. In August of 1977, the parties purchased their family home, with a total down payment of $10,710. $1,000 was paid in advance as a deposit and a check for $9,710, drawn on the same account where the $9,000 had been deposited, was presented at the act of sale. No bank records for the checking account were placed into evidence. Neither party could say how much money remained in the account after the purchase of the house.
Appellee contends that the $9,710 check consisted of his $9,000 of separate property and was used to purchase a community asset, for which he is now due reimbursement.
La.C.C. art. 2367 provides in pertinent part:
If separate property of a spouse has been used for the acquisition, use, improvement, of benefit of community property, that spouse upon termination of the community is entitled to one-half of the amount or value that the property had at the time it was used, The liability of the spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
The burden of proof is on the spouse claiming reimbursement of the separate funds which he contends were used for the benefit of the community. La.C.C. art. 2340 creates a presumption in favor of the community. Thus, the burden was on appellee to provide proof, rebutting the presumption in favor of the community and establishing that his separate funds were used for the acquisition of a community asset. We find that the record before us falls short of establishing that appellee's separate funds were used, at least to the extent of the full $9000.
Appellee bears the burden of proof. He introduced no records of the balance of the account either before the deposit of the $9,000 of separate funds or after the purchase of the house. Appellee introduced only the $9,000 check and the $10,710 deposit on the house. The only evidence submitted on this matter was the uncorroborated testimony of the parties. It is impossible to give more weight to the testimony of either party. However, there is a common ground that they share. Appellee testified that there was no more than $5,000 of community funds in the account. Appellant testified that everything in the account, over $10,000, was community. The common ground in the testimony is that there was $5,000 in community funds in the account. Thus, this court finds that there was $5,000 in community funds in the account. Therefore, appellee was only successful in carrying his burden of proof that he was due reimbursement for separate funds used in the acquisition of a community asset, to the extent that the deposit on the house exceeded $5,000, or in the amount of $5,710. To the extent that the trial judge found reimbursement was due for the entire $9,000, he was clearly wrong in doing so as the evidence is insufficient to carry appellee's burden of proof in excess of $5,710. Therefore the part of the judgment ordering reimbursement for $9,000 is reduced to $5,710.

Jefferson Parish School Board Savings Account.
The trial court found that appellee had a Jefferson Parish School Board savings account containing $7,958.07, which was community property. It was credited to appellee as a received asset. On appeal appellant argues that the trial court erred in this ruling, contending that there is no Jefferson Parish School Board savings account, but *10 only her pension fund which was partitioned in another part of the judgment. She argues that the error arose from a misinterpretation of the filed exhibits regarding the School Board fund. We agree.
Appellee filed exhibits 8 and 9 into evidence, purporting to show both a school board pension fund and a school board savings account. Exhibit 8 is a letter from the Teacher's Retirement System stating that the balance in appellant's pension fund as of October 19, 1989, the date of termination of the community, was $2,461.23. This amount was properly considered a community asset and credited as such by the trial court. Exhibit 9, which appellee contends evidences an additional savings account, is in fact a summary of appellants' pension fund through July of 1992. The documents were misinterpreted as evidencing additional community sums in a savings account, when in fact the additional sums referenced in the exhibit were contributions to the pension fund made after termination of the community in October of 1989.[1] Accordingly, we find that the trial court erred in crediting a $7,958.07 community asset to appellant, when no such asset existed.

Ms. Rogers Reimbursement Claim.
The trial court failed to award appellant any reimbursement for her payments on the mortgage note on the community family home following termination of the community. Appellant argues that under La.C.C. art. 2365 she is entitled to the reimbursement.
La.C.C. art. 2365 provides in pertinent part:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
After termination of the community, appellant occupied the family home with her two children. She testified that she paid the mortgage note on the home, a community obligation, from that time to the date of trial. She did not produce any documentation to support that testimony. She stated that the note was $350 per month between October 1989 and August 1992. Then for the next year through August of 1993 the note was $360 per month and from that time until the time of trial, the note was $397 per month. Appellee made a claim for rental reimbursement for Ms. Rogers' exclusive use of the family home during that period.
As stated above, the burden is on the party claiming the right to reimbursement to prove her entitlement to it. In this case, the trial court, whether based on a credibility decision, a lack of evidence[2] or a set-off for appellee's rental claim[3], did not award appellee *11 a reimbursement award. Based on the record before us, we find no manifest error in the trial court's decision in that regard.

Interest on CDs and Bonds.
The trial court did not include the interest from three bonds (appellee's separate property) as a community asset. Appellant contends that the trial court erred, arguing that the fruits or revenues from separate property is community property. She lists the three bonds and computes the interest earned on the bonds at $9,875. Appellee argues that the trial court was correct in its ruling because appellant produced no evidence concerning the accrual of the interest or how the interest had been spent.
Based on the record before us, we find no error in the trial court judgment which did not credit the interest on the bonds as community property. Each bond provided that the interest would be payable to the named holder, by check, either quarterly or semi-annually. Appellant made no showing as to the location of these funds or upon what they had been spent. Accordingly the trial court ruling on this issue was not erroneous.

Funds Donated to Minor Children.
By this assignment of error appellant contends that the trial court erred in not finding that certain certificates of deposit (CD) had been legally donated to her minor children.
We find that this legal question is outside of the parameter of a community property partition. Whether the bonds are legally owned by the minor children or are the separate property of appellee is irrelevant to a partition of the community property between the parties. The trial judge ruled that they did not form part of the community and he was correct in that ruling. Appellant's right to pursue an ownership claim on behalf of her minor children in the bonds is not before the court in this community property partition case.

Reimbursement to Mr. Rogers for $10,750.
The trial court ruled that appellee did expend $10,750 of his separate funds towards the purchase of his community property, Mandeville lot. Appellant argues that the trial court erred in this finding because appellee did not meet his burden of proof in establishing that $10,750 of his separate funds were used for this purpose.
As stated above, under appellant's first argument, the burden of proof in a claim for reimbursement of separate funds used to purchase community property is on the party claiming the right to the reimbursement. On this issue, we find that appellee met his burden of proof.
The record indicates that appellee received two inheritance checks in the amounts of $24,622.50 and $47,200 in January and March of 1984. These were his separate property. He deposited the checks into a checking account which also contained some community funds. The community funds were negligible in comparison to the separate funds. Appellee used $50,000 to purchase the bonds and CDs discussed above. Thereafter, he wrote a check for $10,750 for the down payment on the purchase of the Mandeville lot. At the time that he wrote the check, the account had a balance of $12,478.87. Appellee testified that he spent his separate funds for the downpayment on the Mandeville lot. While there was other activity in the checking account during this time period, it was all minor in comparison to the three major expenditures that appellee made with his separate funds. The trial judge ruled that the $10,710 spent as a downpayment for the Mandeville lot was appellee's separate property for which he is due reimbursement. We find that the record supports that finding and the ruling of the trial judge is not clearly wrong.

Reimbursement Limited Under La.C.C. art. 2367.
Appellant argues that the trial court erred in failing to limit the amount that she owes in reimbursement to her share of the community assets minus the community liabilities. Appellee contends that the judgment does not order reimbursement over the value of appellant's share of the community.
La.C.C. art. 2367, as quoted above, does provide that the liability of the spouse who owes reimbursement is limited to the value of her share in the community after deduction of all community obligations. To the extent that the trial court judgment might be construed to provide otherwise, or is unclear in its effect, we find that any reimbursement *12 owed by appellant to appellee for his expenditure of separate funds for the benefit of the community is limited to the value of appellant's share of the community assets after deducting the community debts.

Order for the Sale of the Family Home.
The home was ordered sold by the trial court to effect the partition and to allow reimbursement to the parties as due. Appellant's contentions that partition is not necessary is based on her assessment of reimbursements that are due. Since her assessments have not been adopted by the court in full, the sale of the home is still necessary to effectuate the partition. We, therefore, find no error in the order of the trial court to sell the community home.
Accordingly, for the reasons stated above, the judgment of the trial court is amended to reduce in part the reimbursement due appellee of $9,000 to $5,710, to reduce the community assets by $7,958.07, making the amount due appellee from appellant's ½ of the proceeds from the sale of the house $4,509.41, and to limit, if applicable, appellant's liability for reimbursement to appellee for separate funds he used to benefit the community to the value of her share of the community property minus her share of the community liabilities. As amended, and in all other respects, the judgment is affirmed. Costs of appeal are to be equally paid by the parties.
AMENDED; AND AS AMENDED, AFFIRMED.
NOTES
[1] We note that the seven page exhibit is poorly explained and difficult to decipher. However, upon close review, it is clear that the court erred in finding both a pension fund of $2,461.23 and a savings account of $7,958.07. The pension fund figure is arrived at by adding appellant's contributions through June 1988, $517.91, which was unsheltered, to her contribution through June 1989, $1,639.32 and her September and October 1989 contributions of $304, both of which were sheltered, for a total of $2,461.23. This coincides with the exhibit 8 letter from the retirement system showing a balance in appellant's pension account of that same amount. As can be seen from "page (e)" of exhibit 9, the $5,496.84 figure that the court used in computing the sum in the alleged savings account consisted in part of contributions to the pension fund made after termination of the community in October 1989 ($1,639.32 contributed from June 1988 through June 1989, $1,850.40 contributed through June 1990 and $2,007.12 contributed through June 1991, all sheltered, totaling $5,496.84). The court added to this figure the pension fund total of $2,461.23 to arrive at the alleged savings account sum of $7,958.07.
[2] The record before us contains no documentation concerning these mortgage payments, that is, verifying the amount, who made the payments or what part of the payment was principle or interest. Furthermore, the record also does not contain any prior agreements by the parties or prior court decisions concerning child custody, child support, or alimony arrangements.
[3] Viewing appellant's testimony in her favor, her reimbursement claim is for $175 to $198.50 per month (½ the value of the separate property expended). She lived in the home, as did her two children. Appellee produced evidence that the rental value of the home was $650 per month.