WALTER J. ROTHSCHILD, Judge.
| aThe parties, Michael and Patricia Braud, were married on June 18,1977, and divorced on November 22, 2002. On May 4, 2004, Mr. Braud filed a Petition for Partition of Community Property. Trial of the community property partition was held on December 3, 2004, and a judgment was rendered on February 10, 2005. Thereafter, Ms. Braud filed a Motion for Partial New Trial. After a telephone conference with counsel for the parties, the trial court rendered an Amended Judgment on February 25, 2005. Both Mr. and Ms. Braud appeal portions of the Amended Judgment partitioning their community property. For the reasons which follow, we affirm the AÍnended Judgment in part and amend it in part.
On appeal, Mr. Braud asserts that the trial court erred in denying his claim for reimbursement of one-half of the proceeds from the sale of his separate property home, which he asserts was used to pay a community debt, the balance |3due on two community property lots. He argues that the trial court failed to understand and properly treat the difference between a collateral mortgage and a typical pure *1025 mortgage, and erroneously placed meaning on the cancellation dates of collateral mortgages when those cancellations had nothing to do with the separate funds received and then paid out by Mr. Braud. Ms. Braud responds that the trial court correctly found that Mr. Braud did not prove this claim for reimbursement.
At trial, Mr. Braud testified that he purchased a house on Madewood (“Made-wood property”) in LaPlace, Louisiana, on March 13, 1976 for $31,500. He paid a $10,089.84 down payment and assumed the seller’s mortgage for the rest of the purchase price. Mr. and Ms. Braud lived at the Madewood property after they were married in June of 1977.
On March 17, 1978, Mr. Braud[1] purchased two lots in Belle Grove Estates, lots 22 and 23, from Calvin Perrilloux for $12,000 each. Lot 22 was purchased by a cash sale, whereby Mr. Braud borrowed the purchase price from the seller, Mr. Perrilloux. This loan was secured by a $12,000 second mortgage on the Made-wood property in favor of Mr. Perrilloux, at 8% interest and “payable on or before one year from date.” Lot 23 was purchased by a credit sale, whereby Mr. Braud paid a $1,000 down payment and executed an $11,000 promissory note in favor of Calvin Perrilloux, at 8% interest and “payable one year from date without the right of maker to pre-pay said note.”
The parties decided to build a house on lot 22. On August 8, 1978, Mr. and Ms. Braud obtained a loan in the form of a $65,000 collateral mortgage from River-lands National Bank, secured by lot 22. They obtained a $15,000 collateral mortgage, secured by lot 22, and a $15,000 collateral mortgage, secured by lot 23, 1¿from Riverlands National Bank on May 15, 1979. On June 26, 1979, they obtained financing in the amount of $72,000 for lot 22 and the house built thereon from Security Homestead. On September 21, 1979, the $65,000 and $15,000 collateral mortgages secured by lot 22 were cancelled. The $15,000 collateral mortgage secured by lot 23 was not cancelled until August 3, 2001.
On December 6, 1979, Mr. Braud sold the Madewood property for $50,000. He asserts that he used the proceeds from this sale to pay the balance owed on lots 22 and 23, which was a community obligation, and used the remaining proceeds for miscellaneous fees. Thus, he argues that he is entitled to reimbursement for one-half of the proceeds from the sale of the Made-wood property.
Ms. Braud disputes Mr. Braud’s assertion that he used the proceeds from the sale of the Madewood property to pay the balance due on the two community property lots. Ms. Braud testified that the proceeds from the sale of the Made-wood property were deposited into the parties’ joint checking and savings account, and they never remained separate. At the time, both parties worked and deposited their incomes into their joint accounts, because they did not maintain separate bank accounts.
A trial court has broad discretion in adjudicating community property issues and is afforded great latitude in arriving at an equitable distribution of the assets between the spouses. Sherrod v. Sherrod, 97-907 (La.App. 5 Cir. 3/25/98), 709 So.2d 352, 354, writ denied, 98-1121 (La.6/5/98), 720 So.2d 687. LSA-C.C. art. 2340 provides:
Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either *1026 spouse may prove that they are separate property.
The presumption that things in the possession of a spouse during the marriage are community property extends to property acquired by a spouse before | Rthe marriage but possessed by the spouse during the marriage. Talbot v. Talbot, 03-0814 (La.12/12/03), 864 So.2d 590, 597.
LSA-C.C. art. 2365 provides in pertinent part:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of the spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
The party claiming reimbursement of separate funds bears the burden of proving that separate funds existed and were used for the benefit of the community. Rogers v. Rogers, 94-541 (La.App. 5 Cir. 12/9/94), 649 So.2d 7, 9. Accordingly, in the present case, it was Mr. Braud’s burden to prove that the proceeds from the sale of his separate property were used to pay a community debt.
At trial, Mr. Braud’s testimony was the only evidence indicating that Mr. Braud used the proceeds from the sale of his separate property to pay for two community property lots. Ms. Braud disputes Mr. Braud’s testimony and asserts that Mr. Braud’s separate property was never kept separate or used to pay for the two community property lots. Ms. Braud contends that while Mr. Braud may present a plausible scenario of how things occurred, an equally plausible scenario is that the balance due to Mr. Perrilloux for the two lots was paid from the proceeds of the collateral mortgage, not the proceeds from the sale of the Madewood property.
Mr. Braud argues that the trial court mistakenly concluded that Mr. Braud could not have used the money from the sale of his separate property to pay off the debt to Mr. Perrilloux, because the trial court found that the collateral mortgage on lot 22 was cancelled on August 3, 1979, which was several months prior to the time the Madewood property was sold. Mr. Braud asserts that the trial court failed |fito understand the difference between a collateral mortgage and a typical pure mortgage, and that the cancellations of the collateral mortgages had nothing to do with the separate funds received and paid out by Mr. Braud. Mr. Braud further contends that the trial court erred in finding that Mr. Braud could not have paid the $23,000 debt in December 1979 because he only received $2,000 from the sale of the Madewood property. We agree that the trial court’s reasoning and analysis regarding the cancellations of the collateral mortgages is flawed. We further agree that the trial court erred in finding that Mr. Braud only received $2,000 from the sale of the Madewood property, with the remainder to be paid in installments, because the evidence shows that the monthly installments were to be paid to Carruth Mortgage Corporation, not Mr. Braud.
Although the trial court made some errors in its analysis, considering the entire record, we agree with the trial court that Mr. Braud did not meet his burden of proving that he is entitled to reimbursement for one-half of the proceeds from the sale of the Madewood property. As stated above, the spouse claiming reimbursement has the burden of proving that his separate funds were used for the benefit of the community. Although Mr. Braud’s version of events may be possible, Ms. Braud’s version is at least equally plausible. With *1027 out any evidence supporting Mr. Braud’s position and considering the uncorroborated testimony of the parties and the entire record, it is impossible for this court to find that he met his burden of proving that he is entitled to reimbursement for one-half of the proceeds from the sale of the Madewood property. See also Rogers v. Rogers, supra. Accordingly, we affirm the trial court’s judgment, denying Mr. Braud’s claim for reimbursement of one-half of the proceeds from the sale of his separate property.
[7We now address the merits of Ms. Braud’s arguments on appeal. In her first argument, Ms. Braud asserts that the trial court erred in denying her claim for one-half of the rents received by Mr. Braud for a jointly-owned condominium. In a Consent Judgment dated April 15, 2002, the parties agreed that Ms. Braud would have exclusive use of the family home and Mr. Braud would have exclusive use of the community condominium pending the community property partition. Both parties agreed to pay the notes and insurance for the respective properties and to waive reimbursement for these payments, in exchange for each party’s waiver of rental value for the property used by the other party.
Although Mr. Braud was awarded exclusive use of the parties’ condominium, he did not personally reside in it. Rather, he rented it to third parties and purchased a different condominium in which to reside. Ms. Braud contends that she is entitled to one-half of the rents collected by Mr. Braud for the community condominium. She asserts that Mr. Braud was awarded the personal right to use and occupy the condominium, but the parties did not agree to allow Mr. Braud to rent the condominium to others and to profit from such rental. Mr. Braud responds that the parties agreed that he would have exclusive use, not occupancy, of the community condominium and that there is no provision in the consent judgment prohibiting him from choosing another living arrangement and renting the community condominium.
The trial court denied Ms. Braud’s claim for one-half of the rents received by Mr. Braud for rental of the community condominium, stating that “[n]o restrictions were placed on either party’s exclusive use of the property in their possession.” We agree. The parties could have specified in their consent judgment that each party was to have exclusive occupancy of the property in their possession or placed restrictions on each party’s use, but they did not do so. Mr. Braud’s |sdecision to purchase a new condominium and to rent the community condominium and retain the proceeds does not violate or exceed his award of exclusive use. Accordingly, we affirm this ruling of the trial court.
Next, Ms. Braud asserts that the trial court made an error in its award to her for reimbursement of payments she made for air conditioner repairs on the family home. We agree.
In the original judgment of the community property partition, the trial judge awarded Mr. Braud “$2,500 representing reimbursement for payment for air conditioner on community home” and awarded Ms. Braud “2,230 representing reimbursement of ½ of the cost of repairs to the-air conditioner on family home.” Ms. Braud filed a Motion for New Trial, asserting that the trial court made an error in computation by awarding Mr. Braud full reimbursement of the $2,500 he paid for air conditioner repairs, but only awarding Ms. Braud reimbursement for one-half of the $4,460.00 that she paid for air conditioner repairs. Thereafter, the trial court rendered an Amended Judgment to correct its error. In this Amended Judgment, the trial court awarded Mr. Braud “$1,250 representing reimbursement for ½ of the cost *1028 of air conditioner on community home” and awarded Ms. Braud “$1,250 representing reimbursement of ½ of the cost of repairs to the air conditioner on family home.”
Ms. Braud argues that in the trial court’s attempt to correct one error, it made another error in the Amended Judgment. She argues that the correct amount that should be reimbursed to her for ½ of the air conditioner repairs in the family home is $2,230, not $1,250. Mr. Braud does not disagree with Ms. Braud’s argument on this issue, and he admits that she is entitled to relief. Accordingly, considering the evidence before us and noting Mr. Braud’s agreement with the relief requested by Ms. Braud, we amend the trial court’s Amended Judgment, and [3award Ms. Braud $2,230 for reimbursement for one-half of the cost of repairs to the air conditioner in the family home.
Finally, Ms. Braud asserts that the trial court erred in awarding one-half reimbursements to be paid from a jointly-owned escrow fund, rather than from the share of the party owing reimbursement. Mr. Braud agrees that the Amended Judgment should be amended to reflect that the one-half reimbursements for funds expended should be made from the patrimony of the spouse owing reimbursement, as set forth in LSA-C.C. art. 2358.1. Accordingly, we amend the Amended Judgment and order the jointly-owned escrow account to be divided equally between the parties, and the reimbursements due to each party shall be paid from the other party’s share of these funds.

DECREE

For the reasons set forth above, we affirm the trial court’s judgment, denying Mr. Braud’s claim for reimbursement of one-half of the proceeds from the sale of his separate property, and denying Ms. Braud’s claim for one-half of the rents received by Mr. Braud for the condominium. We amend the Amended Judgment to award Ms. Braud reimbursement of $2,230 for air conditioner repairs on the family home, instead of $1,250 as set forth in the Amended Judgment. We further amend the Amended Judgment and order that the jointly-owned escrow account is to be divided equally and then the reimbursements owed to each party shall be paid from the other party’s share of these funds.

AFFIRMED IN PART, AMENDED IN PART, AND RENDERED.

. Although the documents reflect that only Michael Braud purchased the two lots, the parties agree that the two lots were community property.