FREDERICKA HOMBERG WICKER, Judge.
lain this appeal, Robert Dublan, the plaintiff and former husband of defendant, Barbara Dublan, seeks review of a trial court judgment on traversal in the community property settlement, which denied some of his claims for reimbursement from the community.
The parties, Robert and Barbara Dub-lan, were divorced on April 18, 2005 after almost forty years of marriage. The judgment of divorce terminated the community of acquets and gains on September 3, 1994. During the marriage, Mrs. Dublan managed the couple’s finances through two joint checking accounts, and a joint money market account (Starr account) es *761 tablished at the bank where Mrs. Dublan was employed. In the course of the marriage both parties received inheritances, life insurance proceeds and gifts that were deposited into the Starr 13account. In February of 2001, Mr. Dublan deposited insurance proceeds in the amounts of $37,619.15, $2,075.20, $19,045.76, and $3,571.08. In March of 2001, Mr. Dublan deposited $92,500.00 in .funds received from the sale of a home. In August of 2001, Mr. Dublan made two deposits of cash received by inheritance totaling $14,504.00. A final cash deposit in August of 2004 in the amount of $110,600.00 brings deposits of separate property made into the Starr account by Mr. Dublan to $279,915.19.
Mrs. Dublan made four deposits of separate property in the form of insurance proceeds, totaling $62,311.19, into the Starr account in February of 2001.
Although it is not contained in this designated record, the parties acknowledge that a prior judgment of the trial court held that the deposits in the Starr account were indiscriminately commingled and, therefore, are community funds.
Both parties filed Sworn Descriptive Lists and Mr. Dublin filed a traversal. At the hearing on the traversal, the parties jointly introduced a spread sheet of all funds inherited by each. They stipulated that all the funds were separate property as listed by each, with the exception of the first two items on Mr. Dublan’s list, $10,000.00 in an American Express Annuity account held since 1989, and $45,000.00 deposited into the couple’s checking account in the mid 1990’s. Mr. Dublan’s total of separate property, including the two disputed items, amounted to $335,915.19. He sought one-half reimbursement for that entire amount. Mrs. Dublan’s total deposits of separate property amounted to $62,311.00.
At the hearing counsel stated that Mrs. Dublan asserts no reimbursement is due either party. However, she stipulated that if Mr. Dublan is entitled to reimbursement, than Mrs. Dublan also seeks reimbursement. After the hearing the | ¿trial court found that the two disputed items were gifts to Mr. Dublan and that he is entitled to reimbursement. The court denied Mr. Dublan’s claim for reimbursement of the remaining separate property amounts co-mingled into the Starr Account. It is from that judgment that Mr. Dublan appeals.[1]
At the hearing, Mrs. Dublan testified that she was the financial manager of the marriage. The couple had two joint checking accounts, and the Starr account. It was Mrs. Dublan’s responsibility to pay the bills. She testified that in the mid-1990’s, Mr. Dublin’s parents gave him a check for $45,000.00 to pay off the couple’s credit card debt. Further, Mrs. Dublan testified that one year as a Christmas gift, Mr. Dublan’s parents gave the couple a check for $10,000.00 with which an American Express Annuity was purchased. All of the parties’ inheritances and life insurance proceeds were deposited into the Starr account, along with community funds. As previously noted, the funds in that account have already been designated by the court as community funds. As the couple needed money, funds would be transferred into the joint checking account and then used to pay community debts, give gifts to the couple’s children and grandchildren, buy vehicles, household items, and take trips.
*762 Mr. Dublan confirmed his wife’s testimony that she was the financial manager for the family and wrote most of the checks. He stated that he was not aware that Mrs. Dublan transferred money from the Starr account to a joint checldng account. However, he did testify that the checks written from the joint checking account were to pay normal community expenses including house notes, utilities, furniture, food, gifts and vacations.
Mr. Dublan stated that the Starr account consisted of deposits of his separate funds, his wife’s separate funds, and certain community funds. Mr. Dublan | ¡^acknowledged that the funds in the Starr account have been declared to be community funds by a prior judgment of the trial court. In support of his testimony, Mr. Dublan entered the bank records from the various accounts into the record.
Mr. Dublan testified that jewelry and trips purchased for Monique Granier were for the benefit of the community. However, Mr. Dublan did not identify his relationship with Ms. Granier or how these expenditures were beneficial to the community. Mr. Dublan testified that he went to the couple’s camp on weekends, often with Ms. Granier, while Mrs. Dublan went to gambling casinos.
Mr. Dublan’s father testified that he gave his son a Christmas gift of $10,000.00 one year. The gift was for his son only and was not a joint gift to both Mr. and Mrs. Dublan. He further testified that he gave his son a $45,000.00 check to pay off credit card debt.
The parties have stipulated that the $279,915.19 in question was Mr. Dublan’s separate property that was deposited into the Starr account. It is also stipulated that $62,311.00 deposited into the same account was Mrs. Dublan’s separate property. There is no dispute that the Starr account is community property. Further, Mrs. Dublan does not take issue with the trial court’s finding that two items on Mr. Dublan’s separate property list were gifts. Therefore, the only issue for our review is whether the trial court properly denied Mr. Dublan’s claim for reimbursement of separate funds, other than the $10,000.00 American Express Annuity and the $45,000.00 gift from his parents used to pay community credit card debt.
It is clear from the reasons for judgment that the trial court did not find that either Mr. or Mrs. Dublan proved by a preponderance of the evidence that they are | (¡entitled to any claim for reimbursement other that the two items granted for Mr. Dublan.
We are reminded that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. Sherrod v. Sherrod, 97-907 (La.App. 5 Cir. 3/25/98), 709 So.2d 352; writ denied, 98-1121 (La.6/5/98), 720 So.2d 687. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Kambur v. Kambur, 94-775 (La.App. 5 Cir. 3/1/95), 652 So.2d 99. We shall not disturb a finding of fact made by a trial court absent manifest error or a clearly erroneous finding. Sherrod, supra.
La. C.C. art. 2365 provides that:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
*763 Nevertheless, if. the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community, the spouse is entitled to reimbursement from the o spouse regardless of the value of that spouse’s share of the community.
The burden of proof is on the party claiming reimbursement to show that separate funds existed and that those funds were used for the benefit of the community. Rogers v. Rogers, 94-541 (La.App. 5 Cir. 12/9/94), 649 So.2d 7.
In the matter before us, separate funds from both parties, as well as community funds, were clearly co-mingled into the Starr account. Money was withdrawn occasionally to pay community debts or make purchases.
17According to the summary of funds deposited into the Starr account, the account was opened with $20,000.00 of community funds. Between February of 2001 and April of 2004 Mr. Dublan deposited $279,915.19 of his separate funds into the account. Mrs. Dublan deposited $62,311.00 of her separate funds into the account in February of 2001. The couple also deposited another $72,050.01 in community funds, and earned $10,740.35 in community interest from February of 2001 and April of 2004. While it is true that funds were often withdrawn from the Starr account and deposited into the joint checking account for the purposes of paying community debts or making purchases to benefit the community, we cannot tell whether the funds withdrawn were the separate property of Mr. Dublan, Mrs. Dublan, or community funds.
Further, Mr. Dublan does not itemize any particular community expense for which he is seeking re-imbursement. Rather, he simply claims one-half reimbursement for everything he put into the Starr account. La.C.C. art. 2340 creates a presumption in favor of the community. Thus, the burden was on Mr. Dublin to provide proof, rebutting the presumption in favor of the community and establishing that his separate funds were used for the acquisition of community assets. We find that, on the record before us, Mr. Dublin failed to rebut that presumption and to show that he is entitled to re-imbursement from the community. Rogers v. Rogers, supra., 649 So.2d at 9.
Given the facts presented at trial, we find no abuse of discretion in the trial court’s decision to deny the remaining claims for reimbursement to Mr. Dublan.

AFFIRMED.

. Subsequently, the trial court rendered an amended judgment certifying the ruling as final for purposes of appeal.