**Sherry LICCIARDI**

v.

**Daniel LICCIARDI**

NO. 16–CA–289

Court of Appeal of Louisiana, Fifth Circuit.

December 07, 2016

---

COUNSEL FOR PLAINTIFF/APPEL-LEE, SHERRY LICCIARDI, Lauren Davey Rogers

COUNSEL FOR DEFENDANT/AP-PELLANT, DANIEL LICCIARDI, Mark D. Plaisance, Corey M. Oubre

Panel composed of Marc E. Johnson, Robert M. Murphy, and Hans J. Liljeberg

LILJEBERG, J.

This is an appeal from the trial court's February 1, 2016 Judgment partitioning community property between Sherry Licciardi and Daniel Licciardi. For the reasons stated more fully below, we affirm the trial court's judgment as amended.

## FACTS AND PROCEDURAL HISTORY

Sherry Licciardi and Daniel Licciardi were married in 2003, and have two children born in 2005 and 2007. The parties divorced on June 30, 2015. They share joint custody of their children with Ms. Licciardi named as the domiciliary parent. On November 2, 2015, the trial court ordered Mr. Licciardi to pay $1,121.00 per month in child support.

On January 13, 2016, the trial court conducted a trial on the community property partition and took the matter under advisement. The trial court issued a judgment on February 1, 2016, allocating the family home located in Luling, La., along with the indebtedness due on the home, to Ms. Licciardi. The trial court further ordered Ms. Licciardi to pay an equalizing payment to Mr. Licciardi in the amount of $43,077.49. The trial court established a payment plan for Ms. Licciardi to satisfy the equalization payment by paying $416.00 per month for 120 months, "with said payment being considered paid monthly by offsetting Daniel Licciardi's monthly child support payment in the amount of $416.00 a month." The trial court also set forth findings with respect to the value of community assets and liabilities, as well as the reimbursement claims awarded to each party, in "Exhibit—A" attached to its February 1, 2016 Judgment. It is from this judgment that Mr. Licciardi appeals.

## LAW AND DISCUSSION

In his first assignment of error, Mr. Licciardi argues the trial court erred by finding he failed to prove his reimbursement claim seeking to recover $10,000.00, which he contends was his separate property used for the benefit of the community.

In his sworn descriptive list filed prior to the community partition trial, Mr. Licciardi included the following reimbursement claim for the use of separate property: "One–Half Separate Property Inherited from grandfather's estate= $10,000.00." In its February 1, 2016 Judgment, the trial court ruled that any reimbursement claims not specifically addressed in the Judgment were "denied and dismissed per the attached Reasons for Judgment." The Judgment did not address this $10,000.00 reimbursement claim for Mr. Licciardi's alleged separate property. In its detailed Reasons for Judgment, the trial court explained that because "the father lacked any supporting documentation to prove his separate funds were used to enhance the community, the Court has no recourse but to find that he has failed in his burden of proof."

■ On appeal, Mr. Licciardi argues the trial court erred by finding he failed to satisfy his burden of proof because Ms. Licciardi judicially confessed to his use of separate funds for the benefit of the community in her following trial testimony:

Q: You'd indicated that you reviewed somewhat Mr. Licciardi's sworn detailed descriptive list. In his list, in his list he indicates that he is entitled to reimbursement of $10,000, half of the 20,000 he received per investments from his grandfather's estate. You have no reason to dispute that; correct?

A: I have no reason to dispute it. He inherited a house. He turned the house over to his aunt. His aunt gifted him 20,000, and he wants it back. So if I have to, I have to.

Q: Actually gave 20,000?

A: Uh huh (affirmative).

Q: That 20,000 was brought into the marriage; correct; while y'all were married.

A: It was spent on three children. Yes.

\* \* \*

THE COURT:

Where is the third child?

MS. GAUTHIER:

I have a step-daughter.

\* \* \*

Q: It was spent during your marriage?

A: Uh huh (affirmative).

In response, Ms. Licciardi argues that she did not agree to allow Mr. Licciardi a reimbursement for these funds. She claims that she merely acknowledged that Mr. Licciardi's aunt gifted him $20,000.00 and the funds were used on three children, including Mr. Licciardi's daughter from a prior marriage.

La. C.C. art. 1853 provides:

A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.

A judicial confession is indivisible and it may be revoked only on the ground of error of fact.

■ A judicial confession must be explicit and cannot be implied. *Yesterdays of Lake Charles, Inc. v. Calcasieu Parish Sales & Use Tax Dep't*, 15–1676 (La. 5/13/16), 190 So.3d 710, 729; *La Louisiana Bakery v. Lafayette Ins. Co.*, 09–825 (La. App. 5 Cir. 2/8/11), 61 So.3d 17, 26–27, *writ denied*, 11–493 (La. 4/25/11), 62 So.3d 95; *Goines v. Goines*, 08–42 (La. App. 5 Cir. 6/19/08), 989 So.2d 794, 797. Judicial confessions must be intentional waivers relating to the opponent's proof and not merely statements made for some independent purpose, such as for the purpose of providing testimony. *Roberts v. Owens–Corning Fiberglas Corp.*, 03–248 (La. App. 1 Cir. 4/2/04), 878 So.2d 631, 643; *Jackson v.*

*Gulf Ins. Co.*, 250 La. 819, 199 So.2d 886, 891 (1967).

■ We do not find that Ms. Licciardi's trial testimony outlined above qualifies as an explicit admission that Mr. Licciardi used separate funds for the benefit of the community, nor did the testimony serve to waive Mr. Licciardi's obligation to prove his reimbursement claim. Nevertheless, Ms. Licciardi's testimony is evidence relevant to the reimbursement claim and therefore, we next consider whether the trial court erred by finding Mr. Licciardi failed to satisfy his burden of proof.

■ A trial court has broad discretion in adjudicating issues raised by divorce and partition of the community proceedings. *Goines v. Goines*, 09–994 (La. App. 5 Cir. 3/9/11), 62 So.3d 193, 198, *writ denied*, 11–721 (La. 5/20/11), 63 So.3d 984. Reimbursements are factual determinations and absent an abuse of discretion, the trial court's decision should be not be disturbed on appeal. *Norman v. Norman*, 99–2750 c/w 99–2751 (La. App. 4 Cir. 7/12/00), 775 So.2d 18, 25.

La. C.C. art. 2365 governs the reimbursement claim at issue and provides in pertinent part:

> If separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
>
> The liability of a spouse who owes reimbursement is limited to the value of his share of all community property after deduction of all community obligations. Nevertheless, if the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, or edu-

cation of children of either spouse in keeping with the economic condition of the spouses, the spouse is entitled to reimbursement from the other spouse regardless of the value of that spouse's share of all community property.

■ ₅The spouse claiming reimbursement must prove separate funds existed and were used for the benefit of the community. *Braud v. Braud*, 05–758 (La. App. 5 Cir. 4/25/06), 930 So.2d 1023, 1026. In the absence of compelling proof not only that separate funds were available, but also of how the separate funds were used, reimbursement claims between spouses must be denied. *Bourgeois v. Bourgeois*, 09–986 (La. App. 5 Cir. 3/23/10), 40 So.3d 150, 155; *Succession of Blythe*, 496 So.2d 1180, 1183 (La. App. 5 Cir. 1986), *writ denied*, 498 So.2d 15 (La. 1986).

The only evidence in the record relating to the $10,000 reimbursement claim is Ms. Licciardi's testimony cited above. Ms. Licciardi agreed Mr. Licciardi's aunt gifted him $20,000.00, after he turned over the house he inherited from his grandfather to his aunt. La. C.C. art. 2341 provides that property donated to a spouse individually is separate property. Ms. Licciardi does not argue that the aunt intended to include her in the gift. Therefore, it appears these funds were Mr. Licciardi's separate property. However, Mr. Licciardi also had the burden to prove he spent these funds for the benefit of the community. Ms. Licciardi agreed the funds were spent during their marriage on three children, one of whom was Mr. Licciardi's daughter from a prior marriage. Mr. Licciardi did not provide any further evidence to trace when and how he spent these funds on the children.

■ We recognize that child support obligations imposed by law on a spouse are deemed to be community obligations. *See Callender v. Callender*, 625 So.2d 257, 264

(La. App. 5 Cir. 1993), *writ denied*, 633 So.2d 583 (La. 1994). Clearly, separate funds spent on the children born during the parties' marriage benefitted the community. In addition, funds spent to satisfy Mr. Licciardi's legal obligation to support his daughter from his prior marriage while she was a minor would also qualify as a community obligation.[1] However, the record also indicates that Mr. |₆Licciardi's daughter was married in 2014, and was 22 years old in 2015. Therefore, if funds were spent after Mr. Licciardi's daughter reached the age of majority, they may not qualify as community obligations.[2] Without more details regarding how and when these funds were spent on the children, it is not possible to determine which expenditures benefitted the community by satisfying community obligations.

Because Mr. Licciardi failed to introduce evidence to trace when and how the separate funds were spent on the three children, we find the trial court did not abuse its discretion by denying his claim seeking reimbursement for use of separate funds.

■ In his second assignment of error, Mr. Licciardi argues the trial court committed legal error by allowing Ms. Licciardi to pay the equalization payment over a 10–year period, and by offsetting the $416.00 monthly payment against Mr. Licciardi's child support payment.

Mr. Licciardi first argues that allowing a 10–year period to pay the equalizing amount is contrary to the intent of La. R.S. 9:2801, and also claims Ms. Licciardi has assets she can sell or mortgage to make a lump sum payment. As explained above, a trial court has broad discretion in resolving community property partition matters. *Goines, supra*. Furthermore, La. R.S. 9:2801(A)(4)(d) expressly |₇states that an equalization payment may be cash or deferred, and based on terms and conditions set by the court:

(4) The court shall then partition the community in accordance with the following rules:

\* \* \*

(d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, *either cash or deferred*, secured or unsecured, *upon such terms and conditions as the*

---

1. La. R.S. 9:315.22 provides in pertinent part:

   A. When there is a child support award in a specific amount per child, the award for each child shall terminate automatically without any action by the obligor upon each child's attaining the age of majority, or upon emancipation relieving the child of the disabilities attached to minority.
   B. When there is a child support award in globo for two or more children, the award shall terminate automatically and without any action by the obligor when the youngest child for whose benefit the award was made attains the age of majority or is emancipated relieving the child of the disabilities attached to minority.
   C. An award of child support continues with respect to any unmarried child who attains the age of majority, or to a child who is emancipated relieving the child of

   the disabilities attached to minority, as long as the child is a full-time student in good standing in a secondary school or its equivalent, has not attained the age of nineteen, and is dependent upon either parent. Either the primary domiciliary parent or the major or emancipated child is the proper party to enforce an award of child support pursuant to this Subsection.
   D. An award of child support continues with respect to any child who has a developmental disability, as defined in R.S. 28:451.2, until he attains the age of twenty-two, as long as the child is a full-time student in a secondary school. The primary domiciliary parent or legal guardian is the proper party to enforce an award of child support pursuant to this Subsection.

2. La. C.C. art. 29 provides that eighteen is the age of majority.

*court shall direct*. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security. [Emphasis added.]

Based on the foregoing, the trial court enjoyed broad discretion to determine the terms and conditions of the equalization payment and to allow Ms. Licciardi time to satisfy the debt. The trial court noted in its reasons for judgment that adequate time existed for Ms. Licciardi to repay the debt before the children reached the age of majority by offsetting the monthly payment against child support. Furthermore, the trial court noted the payment plan allowed Ms. Licciardi to maintain a stable home environment for the children.

With respect to the argument regarding a lump sum payment, Mr. Licciardi fails to identify specific assets which Ms. Licciardi could sell or mortgage. Pursuant to the sworn descriptive lists submitted by both parties, the only asset that could be sold is the family home, but the trial court indicated in its reasons that its goal was to allow the children to remain in that home. In addition, the parties already owed $132,000.00 for the first mortgage on the home and $29,000.00 on a home equity line of credit, both of which were allocated to Ms. Licciardi.

Considering the broad discretion afforded to the trial court, we do not find the trial court abused that discretion by allowing Ms. Licciardi to pay the equalization payment over a 10–year period.

▌ |₈Mr. Licciardi also argues the trial court erred by offsetting the monthly equalization payment against his child support payment because the arrangement is not in the children's best interest. In support of this argument, Mr. Licciardi cites to *Dubroc v. Dubroc*, 388 So.2d 377, 379 (La. 1980), in which the Louisiana Supreme Court noted that child support is a legal duty a parent owes to his or her child. However, the *Dubroc* court went on to hold that a parent may enter into an agreement to suspend his or her right to compel collection of child support if the agreement fosters the continued support and upbringing of the children:

Since the parent's duty of support and upbringing is a legal duty owed to the child, it cannot be renounced or suspended. There is no prohibition, however, expressed by the law against a spouse's agreement to suspend his right to compel the other parent without custody to turn over to him in advance money necessary for the child's maintenance. Of course, an essential prerequisite to such a conventional modification of a parent's right to receive support payments is implied. The parent may not, by suspension of this right, thwart the purpose for which the right is established, i. e., the enforcement of the child's right to support and upbringing.

For these reasons, an agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child's interests, would be inimical to the ultimate goal of support and upbringing of the child. On the other hand, if the parties clearly agree to a suspension of the payments, and such agreement does not interrupt the child's maintenance or upbringing or otherwise work to his detriment, the agreement should be enforceable.

*Id.* at 380; *see also Melancon v. Melancon*, 428 So.2d 1191, 1192 (La. App. 5 Cir.

1983) (an agreement between ex-spouses to modify the amount of child support set in a prior judgment is enforceable if the *Dubroc* requirements are met).

Mr. Licciardi also cites to *Hedlesky v. Hedlesky*, 15–17 (La.App. 3 Cir. 6/3/15), 166 So.3d 1221, 1226–27, *writ denied*, 15–1308 (La. 10/2/15), 186 So.3d 1148, which held that a parent cannot engage in self-help and *unilaterally* act to an offset an equalization payment against child support. The *Hedlesky* case is clearly distinguishable from the present matter since neither party engaged in self-help and the offset is the result of a court determination.

This Court recognizes that a parent's duty to support his child is a legal duty owed to the child that cannot be renounced or suspended. *Dubroc*, 388 So.2d at 380; *see also* La. C.C. art. 141, Comment (g). However, we have found no prohibition in the applicable law which prevents a court from offsetting an equalization payment against a child support payment when the continued support and upbringing of the children is maintained. Mr. Licciardi does not contend the offset affects the continued support and upbringing of the children in any way. He also does not provide any specific reasons as to why the offset is not in the best interest of the children. The net effect of the offset maintains the parties in the same financial position to support their children. Furthermore, the arrangement avoids multiple transfers of funds between parents who have demonstrated difficulties with communicating in a positive manner.

Based on the foregoing, we find the trial court did not abuse its discretion by providing for the offset of the monthly equalization payment against Mr. Licciardi's child support payment.

Mr. Licciardi finally contends that the trial court erred in tying the equalization payment to his child support payment because he will not be able to enforce the judgment if the child support award is reduced or eliminated in his favor. He also complains that the judgment does not contain terms and conditions that would allow him to accelerate the payments upon default and provides no security to satisfy the equalization payment. Again, La. R.S. 9:2801(A)(4)(d) allows the court wide discretion in establishing the terms of an equalization payment. However, we do agree that in the event the child support award owed by Mr. Licciardi is reduced or eliminated, the trial court should revisit the repayment terms and reconsider whether the offset continues to foster the support and upbringing of the children.

Therefore, we amend the February 1, 2016 Judgment to provide that in the event the child support award owed by Mr. Licciardi is reduced or eliminated, Mr. Licciardi may request that the trial court reconsider whether the offset of the equalization payment against his child support payment continues to foster the support and upbringing of the children and may also request that the trial court reconsider the terms and conditions for the equalization payment.

In his third assignment of error, Mr. Licciardi contends the trial court erred by awarding him interest at a rate of three (3%) percent on the equalization payment instead of legal interest pursuant to La. R.S 9:3500 and La. C.C. art. 2000. The trial court did not state the interest rate awarded in the judgment. However, it did order Ms. Licciardi to make 120 payments at $416.00 per months which results in a total payment of $49,920.00. In its reasons for judgment, the trial court explained how it reached its decision to set the payment at $416.00 per month:

In a nutshell, the former Mrs. Licciardi owes Mr. Licciardi $43,077.49 to buy him out of the community and settle all

debts and reimbursement claims. As previously stated, La. R.S. 9:2801 gives a trial court wide latitude in apportioning property and assigning payment plans for equalizing payments in community property partitions.

That being the case, the Court has gone to the internet to ascertain interest rates on savings accounts and interest rates on home mortgages. Getting a 2% return on a savings account is rare; payment of a home mortgage loan in the 3–4.75% (sic) seems to be common. Therefore, the Court will order that Mrs. Licciardi pay to Mr. Licciardi the sum owed to him at the rate of 3% a month (sic) over the next 120 months. This would make her payment $416 a month.

As explained above, the trial court has broad discretion to set the terms of a deferred equalization payment. La. R.S. 9:2801(A)(4)(d). Furthermore, courts can take judicial notice of prevailing interest rates. *Fuqua v. Fuqua*, 45,555 (La. App. 2 Cir. 9/22/10), 47 So.3d 1121, 1127.

We find the trial court did not abuse its discretion by establishing an equalization payment subject to a fixed interest rate rather than awarding judicial interest which may fluctuate over time and require a change in the amount of the monthly payment. However, because reasons for judgment do not form part of the judgment,[3] we amend the judgment to reflect that the equalization payment is subject to an interest rate of three (3%) percent per year.

## DECREE

For the foregoing reasons, we affirm the trial court's February 1, 2016 Judgment with the following amendments. We amend the judgment to provide that in the event the child support award owed by Mr. Licciardi is reduced or eliminated, Mr. Licciardi may request that the trial court reconsider whether the offset of the equalization payment against the child support continues to foster the support and upbringing of the children and may also request that the trial court reconsider the terms and conditions for the equalization payment. In addition, we amend the judgment to provide that the equalization payment is subject to an interest rate of three (3%) percent per year, which equates to a monthly payment of $416.00 for 120 months.

## AFFIRMED AS AMENDED

---

3. *Bellard v. Am. Cent. Ins. Co.*, 07–1335 c/w 07–1399 (La. 4/18/08), 980 So.2d 654, 671.