NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-1104

GLENN PAUL MATURIN

VERSUS

GALE MARIE BOURGEOIS MATURIN

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 124216
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

CANDYCE G. PERRET
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Candyce G. Perret, Judges.

AFFIRMED.

Diane Sorola
Attorney at Law
402 West Convent St.
Lafayette, LA 70501
(337) 234-2355
COUNSEL FOR DEFENDANT-APPELLANT:
       Gale Marie Bourgeois (formerly, Maturin)

**Natalie Bernard Broussard**
**Attorney at Law**
**203 West Main St., #200—Main Mall**
**New Iberia, LA 70560**
**(337) 365-9000**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
**Glenn Paul Maturin**

**PERRET, Judge.**

In post-divorce proceedings, Plaintiff-Appellee, Glenn Maturin, filed for partition of community property, which hearing was held on June 16, 2016. The trial court determined Mr. Maturin was entitled to reimbursement for one-half of the deposit made on the marital home because the deposit was funded by the separate property of Mr. Maturin. Defendant-Appellant, Gale Bourgeois (formally, Maturin), moved for a new trial, which was granted. However, the parties entered into a Consent Judgment prior to the new trial, and the matter was dismissed on April 5, 2017. Ms. Bourgeois now appeals the trial court's determination that Mr. Maturin is entitled to reimbursement for one-half of the marital home deposit.

### FACTS AND PROCEDURAL HISTORY

The parties were married on September 26, 2007. Shortly after they married, the parties purchased a home in New Iberia, Louisiana, on December 20, 2007, for $310,000.00. The parties borrowed $248,000.00 and were required to pay a cash deposit in the amount of $69,890.26.

Mr. Maturin alleges that he had acquired a Weatherford 401k savings plan/retirement account before the parties' marriage, from which he made a withdrawal on August 29, 2007, netting $48,829.08. He further alleges that he deposited that money into a personal savings account at Community First Bank, which only had his name on it. Mr. Maturin also testified that he sold property on July 20, 2007, from which he netted $38,357.40. These transactions took place before the parties' marriage, and while Mr. Maturin had a separate savings account with Community First Bank. Mr. Maturin testified it was not until after the parties' marriage and home purchase that he added Ms. Bourgeois onto the Community First Bank savings account.

On the other hand, Ms. Bourgeois testified that she sold her trailer home and received proceeds of $13,000.00 from the sale. Ms. Bourgeois further testified that she gave Mr. Maturin $10,000.00 of the proceeds, which she believed was for the purchase of the martial home. However, she also explained the sale may have occurred after the purchase of the marital home. Both Ms. Bourgeois and Mr. Maturin testified that she also spent $10,000.00 on plastic surgery after the parties were married and that she cannot prove that the sale proceeds of her trailer home were used as a deposit on the house. Mr. Maturin further testified that the remaining $3,000.00 from the sale of Ms. Bourgeois' trailer was used to pay off her student loans. Additionally, when asked whether she denies that the house deposit was Mr. Maturin's separate property, she responded, "Honestly, I don't remember what was put down on the house[.]"

Consequently, the trial court found that the martial home deposit was funded by Mr. Maturin's 401k withdrawal and the sale of his property and, therefore, was paid for by the separate funds of Mr. Maturin. Accordingly, the trial court ruled that Mr. Maturin is entitled to reimbursement of one-half of those funds.

Ms. Bourgeois moved for a new trial on three issues, and the trial court granted the motion for a new trial only on those issues. The determination that Mr. Maturin was entitled to reimbursement for the home deposit was not one of those issues raised by Ms. Bourgeois in her motion for new trial.[1] When a new trial is granted as to less than all issues, "the judgment may be held in abeyance as to all parties and issues" unless the partial judgment conforms to those appealable partial

---

[1] The Motion for New Trial was requested on the issues of (1) the amount of fair market rental value of the marital home and whether Ms. Bourgeois owes that amount, (2) the reimbursement to Mr. Maturin for his separate funds used to pay Ms. Bourgeois's debts and expenses after the termination of the community regime, and (3) reimbursement for separate funds Mr. Maturin paid in excess of the court-ordered interim spousal support.

judgments defined in La.Code Civ.P. art. 1915. La.Code Civ.P. art. 1971; *see also Weaver v. Fla. Expl. Co.*, 566 So.2d 1001 (La.App. 3 Cir. 1990). The issues for which Ms. Bourgeois sought review may have changed the total reimbursement awarded to Mr. Maturin in the judgment dated August 16, 2016. Therefore, an appeal of the August 16, 2016 judgment at that time, and not after the motion for new trial had been dispensed with, would have been premature. However, prior to the new trial, the parties entered into a consent judgment, signed on April 5, 2017.

Ms. Bourgeois now appeals the trial court's determination that the deposit for the marital home was made with the separate property of Mr. Maturin, entitling him to a reimbursement. On appeal, Ms. Bourgeois alleges the following assignment of error: (1) the trial court committed manifest error in finding Plaintiff-Appellee, Mr. Maturin, was entitled to reimbursement of one-half of the down payment on the purchase of the parties' first martial home because it found the funds used were his separate property.

## STANDARD OF REVIEW

"A trial court has broad discretion in adjudicating community property issues and is afforded great latitude in arriving at an equitable distribution of the assets between the spouses." *Braud v. Braud*, 05-758, p. 4 (La.App. 4 Cir. 4/25/06), 930 So.2d 1023, 1025. "A trial court's findings as to whether reimbursement claims have been sufficiently established are reviewable under the manifest error standard of review." *Harriss v. Harriss*, 16-9, p. 5 (La.App. 3 Cir. 10/12/16), 204 So.3d 209, 214. "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own

3

evaluations and inferences are as reasonable." *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989).

## DISCUSSION

"If separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used." La.Civ.Code art. 2365. "Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property." La.Civ.Code art. 2340. This presumption of community property "is rebuttable by either spouse upon a showing by a preponderance of the evidence the separate nature of property brought into the community." *Talbot v. Talbot*, 03-814, p. 12 (La. 12/12/03), 864 So.2d 590, 600. "Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, establishes that the fact or causation sought to be proved is more probable than not." *Id.* (quoting *Cay v. State, Dep't of Transp. & Dev.*, 93-887 (La. 1/14/94), 631 So.2d 393, 395.

As Mr. Maturin is the party seeking to rebut the presumption of community property in this case, he had the burden of showing, by a preponderance of the evidence, that the funds used for the marital home deposit were his separate property. *Rogers v. Rogers*, 94-541 (La.App. 5 Cir. 12/9/94), 649 So.2d 7.

Ms. Bourgeois does not contest that the martial home was community property. But, Ms. Bourgeois argues Mr. Maturin did not meet his burden of proving that his separate funds were used for the deposit on the martial home. She cites *Rogers*, 649 So.2d 7, where the fifth circuit amended the trial court's

4

judgment, finding the husband did not prove the entirety of the funds used to purchase the marital home were his separate property. In *Rogers*, 649 So.2d 7, the appellate court amended the trial court's finding that the husband was entitled to $9,000.00 reimbursement. The husband deposited separate funds into a checking account that contained community funds from the parties' salaries. Neither party could say how much was in the account prior to the deposit, but only that it was more than $1,000.00 and less than $5,000.00. Roughly two months later, the parties put a down payment on a home. Part of the down payment was drawn on the same account where the $9,000.00 was previously deposited. The parties introduced no evidence of the account balance before or after the deposit. The appellate court determined the common testimony was that there was $5,000.00 in community funds in the bank account prior to the purchase of the home, therefore, the husband was only entitled to reimbursement for funds used over $5,000.00 for the deposit.

However, this court in *Jensen v. Jensen*, 93-455 (La.App. 3 Cir. 1/5/94), 630 So.2d 959, affirmed the trial court's granting of a reimbursement to the husband who argued that he used separate property for the construction of the martial home. In *Jensen*, the husband sold two pieces of his separate property to fund the construction of the home and to repay a construction loan. The parties' testimonies were contradictory as to where the sale proceeds were deposited—into the separate account of the husband or comingled with community funds in a joint account. No bank records were introduced. However, this court noted that the trial court found the husband's testimony more believable and acknowledged that funds are not community simply by being in a joint account. Based on the other evidence

5

supporting the husband's testimony, this court could not find that the trial court erred in its determination.

Although it was Mr. Maturin's burden to prove that his separate funds were used for the deposit, he only needed to do so by a preponderance of the evidence. In support of his claim, Mr. Maturin introduced: (1) a copy of the cash sale of property in July 2007, prior to the parties' marriage; (2) a copy of the face of a check for $38,357.40 made out to Mr. Maturin for the sale of his separate property; (3) page four of his 401k statement reflecting a withdrawal of $48,829.08 made in August 2007, prior to the parties' marriage; (4) a copy of a cashier's check from Mr. Maturin dated December 19, 2007, for $69,567.94 for the purchase of the marital home; and (5) Mr. Maturin's own testimony.

Unlike in *Rogers*, 649 So.2d 7, Mr. Maturin asserted the proceeds from the Weatherford account and property sale were deposited into his separate bank account, which Ms. Bourgeois did not have access to at the time. Mr. Maturin testified that he paid the deposit on the marital home with the proceeds of the sale of his separate property and the withdrawal from his Weatherford 401K, which together totaled $87,186.48. Mr. Maturin testified that the remainder of the money, after the marital home was purchased, was deposited into the parties' joint account so Ms. Bourgeois could purchase a washer, dryer, and other household items. Mr. Maturin testified he did not have any evidence of the bank account in which the proceeds were deposited into, or the account used to fund the cashier's check for the marital home deposit because the bank records did not go back that far.

Additionally, Ms. Bourgeois' own testimony was that the couple did not have a savings account when they were first married and that she does not

6

remember when one was opened. The parties did have a joint checking account with Chase Bank. Ms. Bourgeois admitted that she managed the couple's money and that, to her knowledge, the money for the down payment on the marital home was not deposited or withdrawn from the community account.

Moreover, aside from the sale of her trailer, Ms. Bourgeois admitted she had no money to contribute to the down payment and that she was not working at the time they bought the home. Ms. Bourgeois was also unsure about when she sold her trailer, before or after the purchase of the martial home. Ms. Bourgeois admitted she had plastic surgery which cost $10,000.00, and Mr. Maturin testified the $10,000.00 came from the sale of Ms. Bourgeois' trailer. No evidence was introduced to rebut Mr. Maturin's testimony and evidence.

After hearing the testimony and reviewing the evidence, the trial court apparently believed Mr. Maturin to be reliable and stated, "The Court finds with GLENN having withdrawn the funds and selling the property within a few months of the Northside purchase the $69,890.26 down payment is the separate funds of GLENN; for which reimbursement is granted."

Although Mr. Maturin did not produce a paper trail that included the bank account his separate funds were deposited into, or which account was used to fund the cashier's check for the marital home deposit, his uncontradicted testimony was that the sale of his property and 401k withdrawal funded the purchase, and were deposited in, and withdrawn from, his separate savings account. His testimony was corroborated by the documents introduced as evidence. Based on the evidence and testimony presented to the trial court, the trial court was not manifestly erroneous in finding the deposit was the separate funds of Mr. Maturin for which he is owed a reimbursement of one-half.

**CONCLUSION**

For the reasons discussed herein, we affirm the trial court's judgment, finding Mr. Maturin is entitled to reimbursement for one-half of the deposit made on the parties' marital home. All costs are assessed to Appellant, Gale Bourgeois (formally, Maturin).

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.